**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

CORI A. WILSON,
                    Appellant,

           v.

DEPARTMENT OF JUSTICE,
                    Agency.

DOCKET NUMBERS
DA-0752-13-0038-B-1
DA-0752-11-0582-I-3

DATE: February 27, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL [1]

James R. Hefflin, Newport Beach, California, for the appellant.

John T. LeMaster, Esquire, Washington, D.C., for the agency.

Tina Hauck, Esquire, Kansas City, Kansas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her involuntary disability retirement and constructive suspension appeals for lack of jurisdiction.  Generally, we grant petitions such as this one

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in these appeals, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant was a Correctional Officer with the Bureau of Prisons at the Federal Correctional Institution in Bastrop, Texas. *Wilson v. Department of Justice*, MSPB Docket No. DA-0752-13-0038-I-1, Initial Appeal File (0038 IAF), Tab 5 at 66. On April 18, 2000, the appellant reported that she had been sexually assaulted by a coworker the previous day. *See id.* at 93-94. The agency placed the alleged perpetrator on home duty pending an investigation of the incident by the agency's Office of Internal Affairs (OIA). *Id.* at 94. As a result of its investigation, OIA determined that the appellant's allegations could not be sustained, and the alleged perpetrator returned to duty in June 2000. *Id.* at 118.

¶3      The appellant was absent from work following the incident, and she began seeing a physician in May 2000, who recommended that the appellant not work through June 4, 2000. *Wilson v. Department of Justice*, MSPB Docket No. DA-0752-11-0582-I-3, Initial Appeal File (0582/3 IAF), Tab 31, Exhibit 1. In

July 2000, the appellant's physician diagnosed her with Post Traumatic Stress Disorder (PTSD) and Major Depressive Disorder and recommended that she and the alleged perpetrator work different hours "for medical/mental health reasons." *Id.*, Exhibits 8, 11. On August 15, 2000, the appellant's physician recommended that she not work from August 18, 2000, through September 2, 2000. *Id.*, Exhibit 13. On August 29, 2000, the appellant asked to move to the Custody Department (Custody) "for physical and mental purposes." *Id.*, Exhibit 15. The agency granted her request. *See id.*, Exhibit 18. On January 3, 2001, the appellant's physician released her from treatment, stating that the appellant had no symptoms of depression or anxiety and that no psychiatric treatment was needed at that time. *Id.*, Exhibit 24.

¶4    On March 13, 2001, the appellant suffered numerous injuries in a motorcycle accident. *See* 0582/3 IAF, Tab 31, Exhibit 25. The appellant returned to work with restrictions in June 2001, was absent from work for surgery in December 2001, returned to work with restrictions in January 2002, and returned to her position in Custody on February 25, 2002. *See id.*, Exhibits 32, 46, 51, 67. Following an encounter with the alleged perpetrator on February 28, 2002, the appellant requested a reassignment so that she would be away from him. *See* 0038 IAF, Tab 4 at 25. On March 5, 2002, the agency granted the appellant's request. *See id.*

¶5    On September 10, 2003, the appellant returned to her physician and reported having "severe depression and anxiety along with insomnia, low energy, poor concentration, distractibility, anger, irritability, and poor decision-making." *See* 0582/3 IAF, Tab 31, Exhibit 104. The appellant did not return to work after October 30, 2003.[2] *See* 0038 IAF, Tab 4 at 30 of 34. On

---

[2] On October 31, 2003, the appellant's physician placed her off work from November 1, 2003, through November 15, 2003. 0582/3 IAF, Tab 31, Exhibit 92. On November 14, 2003, he recommended that the appellant not work through February 14, 2004, stating, "[s]he is not able to work." *Id.*, Exhibit 93. On February 3, 2004, he recommended that the appellant not work from February 14, 2004, through March 14, 2004. *Id.*, Exhibit

December 10, 2003, she applied for disability retirement, citing, inter alia, PTSD and recurrence of PTSD as the bases for her request.[3] *Wilson v. Department of Justice*, MSPB Docket No. DA-0752-11-0582-1-2, Initial Appeal File (0582/2 IAF), Tab 5, Subtab 4i at 4. In response to a question on her disability retirement application asking her to describe how her disease or injury restricted her activities, the appellant stated that she had "self-imposed restrictions" and attempted to avoid contact with inmates and the alleged perpetrator as much as possible. *Id.*

¶6    The Office of Personnel Management (OPM) approved the appellant's application for disability retirement on August 4, 2004, 0582/2 IAF, Tab 5, Subtab 4e, and her retirement became effective on August 8, 2004. *Id.*, Tab 22, Subtab 1 at 23.

¶7    On July 26, 2011, the appellant filed an appeal with the Board, alleging that she was forced to retire due in part to the agency's failure to accommodate her disabilities, sexual harassment, and retaliation for her prior equal employment

---

97. In a document dated February 10, 2004, he stated that the appellant suffered from PTSD, Generalized Anxiety Disorder, and Panic Disorder and that she was not able to work. *Id.*, Exhibit 98. He also stated that the appellant's prognosis was poor and that, if she returned to work, it was likely that she would seriously harm other employees at her workplace. *Id.* On March 3, 2004, the appellant's physician made the same diagnoses and the same prognosis, stated that the appellant was not able to work, and recommended that her "medical leave" be extended through May 9, 2004. *Id.*, Exhibit 101. On May 5, 2004, he made the same diagnoses and the same prognosis and again stated that the appellant was not able to work and would likely seriously harm other employees at her workplace if she returned to work. In addition, he recommended that she be off work due to medical reasons through August 8, 2004. *Id.*, Exhibit 102.

[3] In response to a question on her disability retirement application asking the appellant to describe her diseases or injuries, the appellant also listed numerous physical injuries that she sustained in the motorcycle accident. *See* 0582/2 IAF, Tab 5, Subtab 4i at 4. However, in an affidavit that the appellant submitted in conjunction with her constructive suspension appeal, she stated that she retired because of her mental condition, not because of any injuries she sustained in the motorcycle accident. *See* 0038 IAF, Tab 4 at 32-33.

opportunity (EEO) activity.[4] *See Wilson v. Department of Justice*, MSPB Docket No. DA-0752-11-0582-I-1, Initial Appeal File (0582/1 IAF), Tab 1. The appeal was dismissed without prejudice and refiled twice, most recently in August 2012. 0582/1 IAF, Tab 29; 0582/2 IAF, Tabs 1, 26; 0582/3 IAF, Tab 4. The appellant initially requested a hearing but subsequently withdrew her request. *See* 0582/1 IAF, Tab 14 at 2; 0582/3 IAF, Tab 51.

¶8        On October 23, 2012, while her involuntary disability retirement appeal was pending before the administrative judge, the appellant filed a Board appeal alleging that she was constructively suspended[5] effective October 30, 2003, due to intolerable working conditions. 0038 IAF, Tab 1. The appellant initially requested a hearing but subsequently withdrew her request. *Id.*, Tab 15.

¶9        On February 20, 2013, the administrative judge issued an initial decision dismissing the appeal as untimely filed without a showing of good cause to waive the filing deadline. 0038 IAF, Tab 17 at 1, 7. On review, the Board issued a nonprecedential order dated October 29, 2013, remanding the appeal for further adjudication. RAF, Tab 1.

¶10       On remand, the administrative judge joined the appellant's involuntary disability retirement appeal and her constructive suspension appeal. RAF, Tab 9. Based on the parties' submissions, the administrative judge issued an initial decision on February 28, 2014, dismissing both appeals for lack of jurisdiction. RAF, Tab 13, Initial Decision (ID) at 2, 20.

¶11       The appellant has filed a petition for review. *Wilson v. Department of Justice*, MSPB Docket No. 0752-13-0038-B-1, Remand Petition for Review

---

[4] The record indicates that the appellant filed EEO complaints on November 30, 2000, March 7, 2001, and December 27, 2002. 0038 IAF, Tab 5 at 56, 99, 116.

[5] Although the appellant stated in her initial submission that she was "constructively discharged" effective October 30, 2003, *see* 0038 IAF, Tab 1, on remand the appellant indicated that she was raising a constructive suspension claim. *See Wilson v. Department of Justice*, MSPB Docket No. DA-0752-13-0038-B-1, Remand Appeal File (RAF), Tab 7.

(RPFR) File, Tab 1.  The agency has filed a response in opposition to the petition for review.  RPFR File, Tab 3.  The appellant has filed a reply to the agency's response.[6]  RPFR File, Tab 4.

## ANALYSIS

Involuntary Disability Retirement:  Jurisdictional Standards

¶12     A retirement is presumed to be voluntary and therefore outside the Board's jurisdiction.  *See Vitale v. Department of Veterans Affairs*, [107 M.S.P.R. 501](#), ¶ 17 (2007).  An involuntary retirement, however, is equivalent to a forced removal within the Board's jurisdiction under 5 U.S.C. chapter 75.  *Garcia v. Department of Homeland Security*, [437 F.3d 1322](#), 1328 (Fed. Cir. 2006) (en banc).  Generally, an appellant who claims that a retirement was involuntary may rebut the presumption of voluntariness in a variety of ways, for example, by showing that the retirement was the result of misinformation or deception by the agency, intolerable working conditions, or the unjustified threat of an adverse action.  *SanSoucie v. Department of Agriculture*, [116 M.S.P.R. 149](#), ¶ 14 (2011).  The touchstone of the "voluntariness" analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived him of freedom of choice.  *Coufal v.*

---

[6] The appellant submits two documents with her reply:  (1) a Health Care Provider Certification Form signed by a psychotherapist on January 21, 2004; and (2) the appellant's written declaration in support of the joined appeals, dated May 9, 2014.  RPFR File, Tab 4 at 5-12.  The form is already part of the record.  *See* 0582/3 IAF, Tab 31, Exhibit 96.  Accordingly, it is not new and we have not considered it.  *See Meier v. Department of the Interior*, [3 M.S.P.R. 247](#), 256 (1980) (evidence that is already part of the record is not new).  Although the appellant's signed declaration postdates the close of the record below, it is not new and material evidence because the information in the declaration was available when the record closed.  *See Grassell v. Department of Transportation*, [40 M.S.P.R. 554](#), 564 (1989) (to constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed).  In fact, the contents of the declaration are identical to the appellant's declaration dated January 31, 2014, which she submitted during the proceedings below.  *See* RAF, Tab 10, Exhibit 1.  Accordingly, we have not considered this document either.

*Department of Justice*, [98 M.S.P.R. 31](), ¶ 22 (2004); *Heining v. General Services Administration*, [68 M.S.P.R. 513](), 519-20 (1995). Thus, in order to establish involuntariness on the basis of coercion, an appellant must show that the agency effectively imposed the terms of the resignation or retirement, that the appellant had no realistic alternative but to resign or retire, and that the appellant's resignation or retirement was the result of improper acts by the agency. *Id.* Consistent with this approach, the Board will find a retirement to be involuntary where the employee demonstrates that the employer engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in that employee's position would have felt compelled to resign or retire. *Markon v. Department of State*, [71 M.S.P.R. 574](), 577-78 (1996).

¶13    The Board usually takes a different approach when addressing the question of voluntariness in the context of a disability retirement. In most cases, an appellant who alleges that her disability retirement was involuntary must establish the following: (1) she indicated to the agency that she wished to continue working, but her medical limitations required a modification of her work conditions or duties, i.e., accommodation; (2) there was a reasonable accommodation available during the period between the date on which she indicated to the agency that she had medical limitations but desired to continue working and the date that she was separated, that would have allowed the appellant to continue working; and (3) the agency unjustifiably failed to offer that accommodation. *SansSoucie*, [116 M.S.P.R. 149](), ¶ 15. The agency's failure to accommodate the appellant, standing alone, however, would not make the decision to retire involuntary. *Id.* If accommodation was impossible, the appellant's disability retirement would not have been a constructive removal, and other theories of involuntariness cannot lead to a different conclusion. *Id.* The essence of other claims of involuntariness, including coercion, duress, and intolerable working conditions, is that the appellant had a choice between retiring and continuing to work but was forced to choose retirement by improper

acts of the agency. *Id.* If the appellant was unable to work because of a medical condition that cannot be accommodated, she had no choice as to whether to continue working. *Id.*

¶14    This standard is correct to determine the Board's jurisdiction in most involuntary disability retirement appeals. However, the Board has applied the general principles for determining jurisdiction over alleged involuntary retirements to assess the voluntariness of a disability retirement when, as here, an appellant has alleged that the agency created a discriminatory, hostile work environment, which not only led to intolerable working conditions, but which also caused or exacerbated the medical conditions underlying the appellant's disability retirement. *See Vaughan v. Department of Agriculture*, 116 M.S.P.R. 493, ¶¶ 13-14 (2011). The Board has held that the general test for involuntary retirement is applicable in such circumstances because, in effect, the appellant has alleged that he was coerced into retirement because the agency's discriminatory conduct caused him to become disabled. *Id.*, ¶ 14.

The appellant failed to establish Board jurisdiction over her involuntary disability retirement appeal.

¶15    In the initial decision, the administrative judge considered the appellant's involuntary disability retirement claim under both of the standards set forth above. ID at 10-15. Applying the jurisdictional standard that the Board typically applies in involuntary disability retirement appeals, the administrative judge noted the following: the record does not contain any documentation regarding the appellant's mental disorders that was drafted between January 2001, when her physician found that her symptoms had resolved and released the appellant from treatment, and September 2003, when the appellant began seeing her physician again; there is no evidence that the appellant sought treatment from any healthcare professional for those disorders during that time; on her disability retirement application, the appellant stated that the restriction that she avoid contact with the alleged perpetrator and inmates was "self-imposed"; and, after

the appellant began seeing her physician again in September 2003, the only restriction he imposed upon her was that she not work at all. ID at 12-13.

¶16      Based on this evidence, the administrative judge found that the appellant failed to establish that her disability retirement was involuntary. Specifically, the administrative judge found that, because the appellant's restrictions were self-imposed, she failed to establish that the agency improperly denied her requests for accommodation. ID at 15. The administrative judge further found that, in light of the appellant's physician's assessment in 2003 that the appellant was unable to work, accommodation was impossible. ID at 13 (citing 0582/3 IAF, Tab 31, Exhibit 104). Therefore, the administrative judge found that the appellant's disability retirement was not a constructive removal because the theory of involuntariness requires that the person had a choice between retiring or continuing to work, and the appellant had no choice. ID at 13.

¶17      We discern no reason to disturb this finding. As previously noted, the documentation from the appellant's physician established that the appellant was unable to work from November 2003 until her disability retirement in August of 2004. *See* 0582/3 IAF, Tab 31, Exhibits 92, 93, 97, 98, 101, 102. Therefore, the appellant failed to demonstrate that there was a reasonable accommodation available that would have allowed her to continue working. Accordingly, the administrative judge correctly found that the appellant failed to meet her burden of showing that her disability retirement was a constructive removal under the standard that the Board generally applies in involuntary disability retirement cases. *See* ID at 12-13, 15.

¶18      Applying the jurisdictional standard that the Board generally applies in involuntary retirement appeals, the administrative judge next considered the appellant's claim that her disability retirement was involuntary because the agency created a discriminatory and hostile work environment that exacerbated her medical condition. *See* ID at 13-15. The administrative judge found that the preponderance of the evidence in the record did not support this allegation. ID at

14. In support of this finding, the administrative judge noted that, after declaring that the appellant had no need for treatment in January 2001, her physician specifically refused to blame agency officials for her condition in November 2003. ID at 14 (citing 582/2 IAF, Tab 22, Exhibit 5). The administrative judge found that the agency did not coerce the appellant to retire and that her retirement was not the result of improper acts by the agency. ID at 14.

¶19      The appellant appears to challenge this finding on review, asserting that the administrative judge improperly failed to cite a January 21, 2004 letter from a psychotherapist stating that "the appellant was forced out of her job due to a hostile work environment." PFR File, Tab 4 at 3, 5-7. This argument is unavailing. The administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Moreover, the fact that another health care provider had a different opinion from the appellant's physician provides no basis to disturb the administrative judge's finding that the appellant failed to prove by preponderant evidence her allegation that management created an environment that exacerbated the appellant's condition.

¶20      We also find unpersuasive the appellant's argument on review that, because OPM approved her disability retirement application, and she stated in her application that her disabling condition started on the date of the alleged assault by her coworker, she "has in fact been found to have a compensable disability due in part to the agencies [sic] horrific conduct." PFR File, Tab 4 at 3. While OPM approved her disability retirement application, it did not find that any of the injuries she listed in support of her request for disability retirement, including PTSD, were caused or exacerbated by the agency. *See* 0582/2 IAF, Tab 5, Subtab 4e.

¶21      In determining whether the appellant established that her disability retirement was involuntary, the administrative judge also considered the

appellant's allegation that she was subjected to harassment in 2003 because of the following: her receipt of good, but not "outstanding" evaluations; the keying of her car,[7] and coworkers sneaking up on her or refusing to talk to her. ID at 14. The administrative judge correctly found that the situation and incidents the appellant identified would not have created such intolerable working conditions that a reasonable person in her position would have felt compelled to retire. ID at 14.

¶22      The administrative judge also correctly found that nothing in the record suggests that the agency was forcing the appellant to make any type of decision in December 2003, as there was no pending proposal to remove her from her position. ID at 15. Rather, the administrative judge found that the appellant's decision to apply for disability retirement appears to have been entirely self-initiated. ID at 15. Last, the administrative judge noted that, at the time she filed her application for disability retirement, the appellant was pursuing her discrimination and sexual harassment complaint, in which she eventually prevailed. ID at 15 (citing *Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605 (2009) (a pre-existing discrimination affords the appellant the option of contesting alleged discrimination, harassment, and retaliation, rather than resigning/retiring)).

¶23      Based on her consideration of the record in its entirety, the administrative judge found that the appellant failed to establish that the agency created a hostile work environment, which not only led to intolerable working conditions but which caused or exacerbated the medical conditions underlying her disability retirement. ID at 15. Accordingly, the administrative found that the appellant failed to establish that the Board has jurisdiction over her involuntary retirement appeal. ID at 15.

---

[7] The record indicates that the car keying incident occurred on June 2, 2002. *See* 0582/3 IAF, Tab 31, Exhibit 81.

¶24     We discern no reason to disturb the administrative judge's explained findings. Even if the appellant genuinely felt that she had no alternative but to retire due to her medical conditions, she has failed to make a sufficient allegation of a coercive or improper act on the part of the agency that could have left a reasonable person in her position with no other choice but to retire in August 2004. *See Brown v. U.S. Postal Service*, [115 M.S.P.R. 609](#), ¶ 17, *aff'd sub nom. Brown v. Merit Systems Protection Board*, 469 F. App'x 852 (Fed. Cir. 2011) (even if the appellant's medical condition left her no alternative but to retire, she failed to tie her circumstances to an improper agency act). Therefore, we agree with the administrative judge that the appellant failed to establish that the Board has jurisdiction over her involuntary retirement appeal. ID at 15.

<u>The appellant has failed to prove that the Board has jurisdiction over her constructive suspension appeal.</u>

¶25     In the initial decision, the administrative judge found that "no hearing was necessary" in the appellant's constructive suspension appeal because she failed to raise a nonfrivolous allegation that the Board has jurisdiction over her appeal. *See* ID at 2 n.3. As noted above, however, the appellant withdrew her initial request for a hearing. *See* IAF-0582/3, Tab 51. Consequently, the threshold question in her appeal is not whether the appellant raised a nonfrivolous allegation of jurisdiction but whether she established jurisdiction by a preponderance of the evidence. *See Vitale*, [107 M.S.P.R. 501](#), ¶ 18 (citing *Garcia*, 437 F.3d at 1344).

¶26     In analyzing the appellant's constructive suspension appeal, the administrative judge stated that there are two distinct situations which can give rise to constructive suspension claims: (1) when an agency places an employee on enforced leave pending an inquiry into her ability to perform; and (2) when an employee, absent due to medical restrictions, requests to return to work within these medical restrictions and the agency is bound by policy, regulation, or contractual provision to offer available work to the employee, but fails to do so.

ID at 18. The administrative judge also stated that, for purposes of jurisdiction in a case involving enforced leave, the key question is whether the agency or the employee initiated the leave. ID at 18. The administrative judge found that the appellant did not show that the agency constructively suspended her from October 30, 2003, through August 7, 2004, or that the Board has jurisdiction over her constructive suspension appeal, for two reasons: (1) the appellant did not allege that either of the two situations described above exists here; and (2) the record indicates that the appellant initiated her absence during the relevant time period by requesting leave pursuant to her doctor's recommendations. ID at 19.

¶27      Prior to the issuance of the initial decision, however, the Board revamped its jurisprudence regarding constructive suspension claims in *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397 (2013), and *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294 (2014). In particular, the Board noted that it has recognized several fact patterns that may give rise to an involuntary constructive suspension and, therefore, rejected as misleading the statement in a line of Board cases that constructive suspensions arise in two situations. *Bean*, 120 M.S.P.R. 397, ¶ 8 n.4. The Board further found that the issue of whether the agency or employee initiated the absence is dispositive only in enforced leave suspension appeals, not in involuntary leave-type constructive suspension appeals. *Id.*, ¶ 8 n.5; *see Abbott*, 121 M.S.P.R. 294, ¶ 10 (clarifying that enforced leave suspensions are not "constructive" and that the case law concerning constructive suspensions does not apply). The Board explained that the application of the "initiation" standard does not further the analysis in involuntary leave-type constructive suspension appeals because the very essence of an involuntary leave-type constructive suspension is that the absence was employee-initiated. *Bean*, 120 M.S.P.R. 397, ¶ 8 n.5. Instead, the Board held that, assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of the following is sufficient to establish Board jurisdiction over such an appeal:

(1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. *Bean*, 120 M.S.P.R. 397, ¶ 8.

¶28    Like *Bean*, the instant case involves an involuntary leave-type constructive suspension appeal because it concerns a claim that leave that appeared to be voluntary actually was not. Consequently, the administrative judge should have analyzed the appellant's constructive suspension appeal under the framework set forth in *Bean*. Thus, to establish jurisdiction in her constructive suspension appeal, the appellant must show that: (1) she lacked a meaningful choice regarding her absence beginning on October 30, 2003; and (2) this was because of the agency's improper actions. *See Bean*, 120 M.S.P.R. 397, ¶ 11.

¶29    Although *Bean* was issued before the administrative judge issued the jurisdictional notice on remand, the administrative judge did not, consistent with *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985), correctly inform the appellant of the requirements for establishing Board jurisdiction over her constructive suspension appeal. *See* RAF, Tab 8. Nonetheless, we find that it is unnecessary to remand the appeal for proper jurisdictional notice. The Board has found that an administrative judge's defective notice can be cured if the agency's pleadings contain the notice that was lacking in the acknowledgement order. *Scott v. Department of Justice*, 105 M.S.P.R. 482, ¶ 6 (2007). In its response to the jurisdictional order, the agency cured the defective *Burgess* notice by apprising the appellant of what she must do to establish the Board's jurisdiction over her constructive suspension appeal under *Bean*. *See* RAF, Tab 11 at 34.

¶30    Applying the framework set forth in *Bean*, we note that the appellant was absent from work from October 30, 2003, through August 7, 2004, the effective date of her disability retirement, based on her physician's assessment that she was "unable to work." *See* 0582/3 IAF, Tab 31, Exhibits 92, 93, 97, 98, 101, 102. Thus, although the appellant requested leave, we find that she lacked a

meaningful choice in the matter because her physician stated that she was unable to work due to her medical condition. *See Bean*, [120 M.S.P.R. 397](#), ¶¶ 13-14.

¶31 We next turn to the issue of whether the appellant proved by preponderant evidence that the agency's improper actions deprived her of a meaningful choice regarding her absence from work. As previously discussed, the appellant was absent from work beginning October 30, 2003, based on her physician's assessment that she was unable to work due to her medical condition; however, the appellant failed to prove that her condition was caused or exacerbated by the improper acts of the agency. In other words, although the appellant had no choice but to absent herself from work beginning October 30, 2003, she has not shown that her lack of choice in the matter is attributable to any improper acts by the agency. Thus, the second prong of the jurisdictional test set forth in *Bean* has not been satisfied, and the Board lacks jurisdiction over the appellant's constructive suspension appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* [5 U.S.C. § 7703](#)(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, [931 F.2d 1544](#) (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____

William D. Spencer
Clerk of the Board

Washington, D.C.