# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TONYA L. JEFFERSON,
             Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
             Agency.

DOCKET NUMBER
AT-0752-14-0788-I-1

DATE: September 25, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Daphne D. Ivery</u>, Atlanta, Georgia, for the appellant.

<u>Neil S. Deol</u>, Esquire, Decatur, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1     The agency has filed a petition for review of the initial decision, which found that the agency constructively removed the appellant from her position. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision, and DISMISS the appeal for lack of jurisdiction.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2    Effective March 25, 2014, the appellant resigned from her GS-9 Legal Administrative Specialist position. Initial Appeal File (IAF), Tab 4 at 6. She subsequently filed a constructive removal appeal with the Board, asserting that she was forced to resign because the agency failed to reasonably accommodate her disability, which caused her health to decline severely.[2]  IAF, Tab 1 at 4, 6. She requested a hearing. *Id.* at 2.

¶3    After holding the requested hearing, the administrative judge issued an initial decision finding that the agency constructively removed the appellant from her position. IAF, Tab 17, Initial Decision (ID). She found that: (1) the appellant is an individual with a disability; (2) the agency could have granted the appellant the reasonable accommodation she requested without undue hardship, yet unjustifiably failed to provide it; (3) the accommodation the appellant requested did not conflict with the agency's collectively bargained seniority system; and (4) the agency's actions were discriminatory and made the appellant's working conditions so difficult that a reasonable person in her position would have felt compelled to resign. ID at 5-9. The administrative judge ordered the agency to cancel the appellant's resignation; restore her to her previous position, effective March 25, 2014; and pay her the appropriate amount of back pay. ID at 9. She also ordered interim relief. ID at 10-11.

¶4    The agency has filed a petition for review. Petition for Review (PFR) File, Tab 3. It argues that the administrative judge erred in finding that the appellant resigned involuntarily based on a failure to accommodate because: (1) the

---

[2] The appellant first amended an equal employment opportunity (EEO) complaint to include an allegation that her resignation constituted a constructive discharge, which the agency processed as a mixed case. IAF, Tab 4 at 7. However, it is unclear whether her appeal was timely filed because, among other things, we cannot determine whether the agency issued a final agency decision before she filed her Board appeal and, if so, when. *See* 5 C.F.R. § 1201.154(b) (a Board appeal must be filed within 30 days of the appellant's receipt of the final agency decision). In any event, we need not decide the timeliness issue because we dismiss this appeal for lack of jurisdiction. *See Fletcher v. Office of Personnel Management*, 118 M.S.P.R. 632, ¶ 10 n.2 (2012).

appellant failed to engage in the interactive process; (2) the administrative judge misconstrued the law to require the agency to provide the appellant with the accommodation of her choosing; (3) the administrative judge failed to recognize that the accommodation the appellant requested was by law unreasonable because it conflicted with the seniority provisions of the collective bargaining agreement; and (4) the appellant's failure to await the outcome of an equal employment opportunity (EEO) complaint she filed regarding the alleged failure to accommodate renders her resignation voluntary. *Id.* The appellant did not respond, except to challenge the agency's certification of interim relief. PFR File, Tab 5.

The agency has complied with the interim relief order.

¶5    In the initial decision, the administrative judge ordered the agency to provide the appellant with interim relief, in the event that either party filed a petition for review, including: (1) effecting the appellant's appointment to the position of Legal Administrative Specialist, GS-901-09, retroactive to the date of the initial decision; and (2) providing the appellant with the pay and benefits of this position while any petition for review is pending. ID at 10-11.

¶6    Where the appellant is the prevailing party in an initial decision that grants interim relief, any petition or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B). *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 11 (2014). The agency is only required to take appropriate administrative action by the deadline for filing the petition for review that will result in the issuance of a paycheck for the interim relief period and is not required to have paid the appellant by the deadline. *Id.*, ¶ 13. An agency's inadvertent, minor mistake in providing an appellant with interim relief can be excused if promptly corrected. *Moore v. U.S. Postal Service*, 78 M.S.P.R. 80, 84 (1998). If an agency fails to comply with an interim relief order, the Board has

discretion to dismiss the petition, but is not required to do so. *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 11 (2013).

¶7    With its petition for review, the agency filed: (1) a declaration from agency counsel averring under penalty of perjury that the agency has complied with the interim relief order; (2) a letter to the appellant informing her of her interim appointment and instructing her to report for duty; (3) a Standard Form (SF) 52 requesting the appellant's interim appointment, retroactive to February 2, 2015; and (4) an SF-50 documenting the same. PFR File, Tab 3 at 12-17.

¶8    The appellant challenged the agency's certification of interim relief. Specifically, she asserted that the agency did not fully comply with the interim relief order because it: (1) placed her on leave without pay (LWOP) from February 23, 2015, to February 27, 2015, totaling 36 hours; and (2) had not processed her request for the continuation of her dental and vision insurance. PFR File, Tab 5 at 4-5.

¶9    Pursuant to 5 C.F.R. § 1201.116(b), the Clerk of the Board issued an order affording the agency an opportunity to respond to the appellant's challenge. PFR File, Tab 6. In response, the agency submitted evidence that the 36-hour charge to LWOP was corrected in March 2015. PFR File, Tab 7 at 5-6. As to dental and vision insurance, the agency asserted that employees bear the responsibility to initiate such benefits, that it advised the appellant of this information on several occasions, and that it also provided the appellant with the contact information to do so. *Id.* at 4.

¶10    The appellant filed a reply, submitting evidence that largely supports the agency's assertions. Namely, she submitted email correspondence indicating that she enrolled for dental and vision benefits on March 31, 2015. PFR File, Tab 8 at 11-16. She also provided the Leave and Earnings Statement for the pay period ending March 7, 2015, that reflects 36 hours of LWOP, as well as the Leave and Earnings Statement for the following pay period reflecting that no LWOP had been taken to date, which suggests that the error was corrected. *Id.* at 8-9. She

contends that the agency delayed her wages and her ability to sign up for dental and vision benefits because it misspelled her last name on her appointment paperwork. *Id.* at 4; *see id.* at 6 (the "s" was omitted from the appellant's last name in box 1 of the SF-50 documenting her appointment). However, she attached evidence that the agency corrected this error on March 10, 2015. PFR File, Tab 8 at 7.

¶11    Based on the foregoing, we find that the agency has complied with the interim relief order. The agency clearly took appropriate administrative action, prior to filing its petition for review, to effectuate the appellant's interim appointment. *See* PFR File, Tab 3 at 14-16. Whether the appellant received all of the payment she was due by the time the agency filed its petition for review is irrelevant. *See Archerda*, 121 M.S.P.R. 314, ¶ 13. Regardless, the issues the appellant raises regarding the 36 hours of LWOP and her vision and dental insurance both appear to have been corrected no later than March 31, 2015, less than a month after the agency filed its petition for review. *See Omites v. U.S. Postal Service*, 87 M.S.P.R. 223, ¶¶ 7-8 (2000) (finding that the agency's delay in paying back pay for 2.5 months after issuance of the initial decision did not constitute noncompliance with the interim relief order because the agency promptly initiated administrative action for the payment; the delayed receipt of payment was inadvertent; and, even assuming arguendo that it constituted noncompliance, the Board would exercise its discretion not to dismiss the agency's petition for review). To the extent that the agency's misspelling of the appellant's name contributed to any delay, this minor error was promptly corrected and there is no evidence that it was anything but inadvertent. Therefore, we will not exercise our discretion to dismiss the agency's petition for review.

The appellant has not shown that her resignation was involuntary.

¶12    Medical documentation the appellant provided to the agency indicates that her medical condition and the side effects of the medication she takes for that

condition cause insomnia, "morning somnolence," and poor concentration, making it unsafe for her to drive to work in the morning. IAF, Tab 8 at 42. Thus, her physician recommended that she be permitted to participate in a van pool to commute to work, so as to avoid morning driving. *Id.* The appellant requested to modify her work schedule as a reasonable accommodation that would allow her to participate in a van pool operated by her neighbor. IAF, Tab 12 at 13-14, 20; Hearing Compact Disc (HCD) (testimony of the appellant). The van pool arrived at work at approximately 7:00 a.m. and the appellant needed to end her work day at 4:30 p.m. to ride home with the van pool. HCD (testimony of the appellant). Accordingly, she requested to change her tour of duty, from 8:00 a.m. - 5:30 p.m., to 7:00 a.m. - 4:30 p.m. *Id.*; IAF, Tab 8 at 24-29, Tab 12 at 6-22, 26-27. To allow the appellant time to find alternate transportation that would accommodate her regular tour of duty, the agency temporarily granted this request from May 2013, until February 2014, when it directed her to resume her 8:00 a.m. - 5:30 p.m. schedule. IAF, Tab 8 at 24-29, Tab 12 at 6-22, 26-27. The appellant resigned less than 2 months later, stating in her resignation letter that she was resigning "under extreme duress brought on by work related stressors which aggravated health related issues."[3] IAF, Tab 4 at 18.

¶13 A decision to resign is presumed to be a voluntary act outside the Board's jurisdiction, and the appellant bears the burden of establishing by preponderant evidence that her resignation was involuntary and therefore tantamount to a forced removal. *Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 5 (2010). One way for an employee to overcome the presumption that a resignation is voluntary is to show that it was the result of coercion by the agency. *Id.* If an employee claims that her resignation was coerced by the agency's creating intolerable working conditions, she must show that a reasonable

---

[3] There is no medical evidence in the record to support the appellant's claim that the agency's alleged failure to accommodate her disability exacerbated her alleged disability or otherwise caused her health to decline.

person in her position would have found the working conditions so oppressive that she would have felt compelled to resign. *Id.*

¶14    When an appellant raises a discrimination allegation in connection with a claim of involuntariness, the Board may address the allegation only insofar as it relates to the issue of voluntariness and not whether the evidence establishes discrimination under a Title VII standard. *Id.*; *Conover v. Department of the Army*, 78 M.S.P.R. 605, 612 (1998). In other words, even if an agency's actions are discriminatory, the appellant still must show how those actions coerced her resignation. *See Tripp v. Department of the Air Force*, 59 M.S.P.R. 458, 461 (1993). Thus, an agency's failure to accommodate an eligible employee is simply a factor to be considered in assessing whether a resignation was involuntary.[4] *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 16, *aff'd*, 469 F. App'x 852 (Fed. Cir. 2011), *cert. denied*, 133 S. Ct. 414 (2012). For the reasons set forth below, we find that the appellant failed to satisfy this burden.

¶15    The appellant testified that she was able to ride with the 7:00 a.m. shift van pool even when working the 8:00 a.m. shift. HCD (testimony of the appellant). She said that she ordinarily slept in the van on the way to work, so she simply continued sleeping until 7:45 a.m. to start work at 8:00 a.m. *Id.* Thus, she explained, her need for a schedule change was not to facilitate her arrival at work, but rather, to enable her to take the 4:30 p.m. van pool home at the end of the day. *Id.* She stated that her husband, uncle or son could pick her up when she

---

[4] In the initial decision, the administrative judge appears to have conflated the standard for involuntary resignation appeals and the standard for involuntary disability retirement appeals. *See* ID at 5 (citing *Okleson v. U.S. Postal Service*, 90 M.S.P.R. 415, ¶ 8 (2001)). The latter standard is inapplicable in this appeal. *See Rule v. Department of Veterans Affairs*, 81 M.S.P.R. 282, ¶¶ 4-5 (1999) (remanding an appeal to afford the appellant an opportunity to establish jurisdiction where the administrative judge set forth the standard concerning the Board's jurisdiction over involuntary resignation and retirement appeals generally, but did not provide the appellant with notice concerning the "special circumstances involved when an appellant claims that a disability retirement was involuntary"). We discern no harm, however, because the administrative judge issued a jurisdictional order containing correct notice. IAF, Tab 7.

worked until 5:30 p.m., but this required them to go out of their way and required her to spend money on gas for her uncle and son. *Id.* She stated in her prehearing submission that she had to wait "up to three hours after the end of her shift" to be picked up, but during her hearing testimony referenced only one occasion when she had to wait until 7:00 p.m. *Id.*; IAF, Tab 11 at 8. She testified that using public transportation would have involved taking two buses and a train because the area where she lives has limited mass transit options. HCD (testimony of the appellant). Accepting as true the appellant's assertions, it appears that taking public transportation would have required approximately 2.5 hours of travel time one way. *See id.* (the appellant testified that if she were to begin work at 9:00 a.m., she would have had to leave home at approximately 6:30 a.m.). It appears that her commute in the van pool was approximately 45 minutes one way. *See id.* (the appellant testified that the van pool generally left at 6:15 a.m. to arrive in time for the 7:00 a.m. shift).

¶16　　Even if the agency failed to accommodate the appellant's disability when it directed her to resume her regular schedule, which we need not decide here, we do not agree with the administrative judge that this rendered the appellant's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign. As to waiting for rides, the appellant did not indicate how long she had to wait on average or how frequently she had to wait for significant periods of time and, in any event, did not explain how or why waiting rendered her working conditions intolerable. As to the appellant's claim that she had to give her family members gas money, we discern no basis to conclude that her overall commuting costs increased substantially. To the extent that her costs did increase, she did not indicate by how much or explain how the commuting costs rendered her working conditions intolerable. That the appellant's family members may have had to go out of their way to pick her up has no relation to her working conditions. We also are not convinced that, had the appellant taken public transportation, a reasonable person would have found

the increased commuting time intolerable; her daily commute home would have increased by a total of 1.75 hours, assuming that the evening van pool took 45 minutes, whereas public transportation took 2.5 hours.[5] In sum, the appellant has not presented sufficient evidence for us to conclude that a reasonable person would have felt compelled to resign because of having to wait for a ride or take public transportation, rather than using a more convenient mode of transportation. *Cf. Gerald v. University of Puerto Rico*, 707 F.3d 7, 26 (1st Cir. 2013) (holding that the fact that an employee's "commute increased by a couple hours and there was associated gasoline and tolls costs" due to a transfer did not render her working conditions so intolerable that a reasonable person in her place would feel forced to resign as opposed to staying on the job while seeking redress).[6]

¶17    The record evidence also suggests that it was the mere fact that the agency directed the appellant to return to her regular schedule, more so than the actual

---

[5] The appellant testified that it would be unsafe for her to take public transportation because she could be sleepy or otherwise not fully alert due to her medical condition and medications. HCD (testimony of the appellant). However, she conceded that her doctor never prepared any documentation indicating that she could not use mass transit or ride a bus. *Id.* It also is unclear whether the appellant experienced these symptoms in the evening and, if so, how frequently or severely. The medical documentation she submitted to the agency stated that she experienced "morning somnolence," that the van pool would allow her to "circumvent morning driving," and that she was "most likely to have lingering side effects from current medications" in the morning. IAF, Tab 8 at 42; *but see* IAF, Tab 12 at 6 (medical documentation indicating that the appellant experiences "excessive daytime sleepiness"). Further, the appellant testified that she did not have any difficulty focusing at work once she was able to "shake off" any lingering side effects of her medication. HCD (testimony of the appellant). There also is no evidence that the appellant informed the agency that she believed public transportation to be infeasible. In any event, public transportation was not her only alternative. Based on the foregoing, the appellant's assertion that it would have been unsafe for her to take public transportation does not alter our analysis as to the voluntariness of her resignation. Although not directly applicable here, we also note that the Board has stated that an employee is responsible for getting to and from her work site. *See Letcher v. U.S. Postal Service*, 22 M.S.P.R. 560, 563 (1984).

[6] Other than decisions of the U.S. Court of Appeals for the Federal Circuit, the decisions of the circuit courts are not binding on the Board, but the Board may follow them if it finds their reasoning persuasive. *Bowman v. Small Business Administration*, 122 M.S.P.R. 217, ¶ 13 n.8 (2015).

effects of that action upon her, which prompted her to resign. Specifically, the appellant testified that she felt that the agency had betrayed her, was not taking care of her, and did not care about her because her request for a schedule change was reasonable and could have been granted. HCD (testimony of the appellant). She stated that she was a good employee and always "went above and beyond" for the agency, and it "wasn't going to kill" the agency to allow her to leave at 4:30 p.m. *Id.* We also note that the appellant's resignation letter made no specific mention of her transportation issues or her accommodation request. IAF, Tab 4 at 18. The appellant's dissatisfaction with the agency's failure to facilitate her use of the mode of transportation she found most convenient, without more, does not render her resignation involuntary.

¶18    Based on the foregoing, we find that the appellant has not presented sufficient evidence for us to conclude that her resignation was involuntary. We therefore must DISMISS her appeal for lack of jurisdiction.[7] Because we lack jurisdiction, this is not a mixed case and the agency must recommence processing this matter as a non-mixed complaint. *See Miranne v. Department of the Navy*, 121 M.S.P.R. 235, ¶ 14 (2014) (citing *Blickenstaff v. Department of Justice*, EEOC Appeal No. 01A42427, 2004 WL 1084919, at *2 (E.E.O.C. May 5, 2004)); *see also* 29 C.F.R. § 1614.302(c)(2)(ii).

¶19    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

---

[7] We find it unnecessary to address with specificity the agency's arguments that the appellant failed to engage in the interactive process, was not entitled to the accommodation of her choosing, and should have awaited the outcome of the EEO process before resigning, or that granting her desired accommodation was unreasonable because it conflicted with seniority provisions of the collective bargaining agreement. The main thrust of the agency's petition for review, with which we agree, is that the administrative judge erred in finding that the appellant resigned involuntarily. Moreover, the question of whether the appellant resigned involuntarily implicates jurisdiction, an issue that is always before the Board. *See Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 7 (2010).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:            _____
                          William D. Spencer
                          Clerk of the Board

Washington, D.C.