NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHNNIE L. BROWN,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2011-3109

---

Petition for review of the Merit Systems Protection Board in case no. SF0752090881-I-1.

---

Decided: December 13, 2011

---

JOHNNIE L. BROWN, of Oakland, California, pro se.

DAVID S. BROOKS, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were JAMES M. EISENMANN, General Counsel and KEISHA DAWN BELL, Deputy General Counsel.

---

Before RADER, *Chief Judge*, LINN and MOORE, *Circuit Judges*.

PER CURIAM.

Johnnie L. Brown ("Brown") appeals from a final decision of the Merit Systems Protection Board ("Board") dismissing her appeal for lack of jurisdiction. *Brown v. U.S. Postal Serv.*, 2011 M.S.P.B. 23 (Feb. 11, 2011) ("*Board Decision*"). Because the Board correctly determined that Brown failed to make non-frivolous allegations which, if proven, could establish involuntary retirement, this court affirms.

## I. BACKGROUND

Brown served as an employee of the Oakland, California processing and distribution facility of the United States Postal Service ("the Agency") from August 1965 through August 2000. In 1991, Brown was promoted to the position of supervisor of distributions, where she served until 1999. Brown alleges that the Agency subjected her to a hostile and discriminatory work environment during her tenure in this position. *Board Decision* at 1-2. Brown alleges that her work situation was so bad that on August 18, 1999, she lost consciousness at work after being called into a meeting with her supervisor. *Id.* at 2, 9. After this incident, Brown was hospitalized and did not report back to work. *Id.* On May 12, 2000, Brown's treating psychologist reported that she was "totally disabled . . . for the near foreseeable future" and diagnosed her with "acute, chronic, and pervasive stress" and "depress[ion] because of the stress, . . . lowered concentration, cognitive difficulties as well as physical overlays." App. T, Ex. 84 at 29. Brown pursued a traumatic injury claim with the Office of Workers' Compensation Programs ("OWCP") based on the August 1999 incident, which the OWCP denied in June 2000, but the OWCP

advised her to pursue another occupational disease claim related to other on the job incidents that she had referenced. *Board Decision* at 9. Effective August 2, 2000, Brown retired from the Agency. *Id.* at 2.

While still employed, from 1994 through 1999, Brown unsuccessfully pursued various claims of age and sex discrimination, retaliation, and intentional infliction of emotional distress before the Equal Employment Opportunity Commission ("EEOC") and the U.S. District Court for the Northern District of California. *Id.* In 2003, Brown filed another district court action alleging employment discrimination and constructive termination, the latter of which the court dismissed for failure to exhaust administrative remedies. *Brown v. Potter*, No. C03-1248 MJJ, slip. op. 17 (N.D. Cal. Sept. 14, 2004), *aff'd*, 285 F. App'x 421 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 2426 (2009). More than nine years after her retirement, on August 11, 2009, Brown filed an appeal with the Board alleging involuntary retirement. The administrative judge ("AJ") dismissed Brown's claim as untimely, finding no good cause or excuse for her nine-year delay in filing. *Brown v. U.S. Postal Serv.*, No. SF0752090881-I-1, at 10 (M.S.P.B. Dec. 7, 2009) ("*Initial Decision*"). On review, the Board held that "[b]ecause the issues of timeliness and jurisdiction [we]re inextricably intertwined in this appeal, the [AJ] should not have dismissed the appeal on timeliness grounds without first addressing jurisdiction." *Board Decision* at 5. The Board then dismissed the appeal for lack of jurisdiction—without a hearing—based on its conclusion that Brown failed to make a non-frivolous allegation that her retirement was an involuntary action within the Board's jurisdiction. *Id.* at 10, 12. Brown timely appealed, and this court has jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. Discussion

### A. Standard of Review

The Board's jurisdiction is a question of law, which this Court reviews *de novo*. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc). This court, however, is bound by the AJ's factual findings on which the jurisdictional determination is based unless unsupported by substantial evidence. *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998).

### B. The Board's Jurisdiction

The Board's jurisdiction "is not plenary, but is limited to those areas specifically granted by statute or regulation." *Garcia*, 437 F.3d at 1327 (internal citations omitted). The Board generally lacks jurisdiction over an employee's voluntary actions, *see* 5 U.S.C. § 7512, and an "employee who voluntarily resigns or retires has no right to appeal to the [Board]." *Garcia*, 437 F.3d at 1228. However, the Board does possess jurisdiction over an employee's retirement if it "was involuntary and thus tantamount to forced removal." *Id.* (citing *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340-41 (Fed. Cir. 2001)). "Resignations are presumed voluntary, and the burden of showing that the resignation was involuntary is on the petitioner." *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). To establish a right to a hearing on the issue of involuntary retirement, the petitioner must make a non-frivolous allegation of fact, *i.e.*, an allegation that, if proven, could establish the Board's jurisdiction. *Garcia*, 437 F.3d at 1344.

### C. Involuntary Retirement

"An employee may demonstrate that his or her resignation was involuntary by demonstrating that the resignation was the product of coercion." *Parrot v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1332 (Fed. Cir. 2008) (citing

*Garcia*, 437 F.3d at 1329). To satisfy the "narrow doctrine" of involuntary retirement based on coercion, an employee must show that "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." *Garcia*, 437 F.3d at 1329 (citing *Shoaf*, 260 F.3d at 1341). The reviewing tribunal must consider the totality of the circumstances "[t]o objectively determine whether a reasonable person in the employee's position would have felt compelled to resign." *Shoaf*, 260 F.3d at 1342. The test is thus one of "external coercion and duress, and [is] not [based on] internal misconceptions or unsubstantiated threats." *McGucken v. United States*, 407 F.2d 1349, 1351 (Ct. Cl. 1969). Although discrimination claims are generally made to the EEOC, the Board must consider an appellant's allegations of discrimination when those allegations form the basis of an adverse action claim, such as a claim for involuntary retirement. 5 U.S.C. § 7702(a)(1); *Garcia*, 437 F.3d at 1328.

Brown argues that the Agency coerced her retirement because, *inter alia*, "she was subjected to continuing harassment, disparate treatment and a hostile work environment." Appellant Br. ¶ 12. According to Brown, the discriminatory work conditions, along with her medical condition, "had a tremendous impact on her ability to fulfill her work functions." *Id.* Brown contends that the Agency discriminated against her by (1) denying her light duty request in March 1997—while granting other employee's light duty requests—and, instead, assigning her to work on large volumes of sack mail with fewer employees than other supervisors; (2) setting impossible productivity goals for her unit; and (3) groundlessly criticizing her. *Id.* ¶¶ 19-20, 55-56. Further, Brown alleges a pattern of poor treatment, including an incident in Septem-

ber 1996 where one of her supervisors, in an effort to prevent her from sitting down during her assignment, allegedly "thr[ew her desk] out on the platform and destroyed [it] including [Brown's] personal items and official records." *Id.* ¶ 51. Thus, Brown argues that she "had no realistic alternative but to retire." *Id.* ¶ 15; *See Shoaf*, 260 F.3d at 1342.

The government argues that none of Brown's allegations were sufficient to establish that her retirement was compelled. Because Brown continued to work from 1991 through 1999, and for two and a half years after the denial of her light duty request, the government argues that she was not forced to retire based on the Agency's actions. *See Terban*, 216 F.3d at 1024-25. The government asserts that the Board properly "weighed Brown's allegations against the principle that an employee is not guaranteed a stress-free working environment." Appellee Br. 10; *Miller v. Dep't of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000) ("An employee is not guaranteed a working environment free of stress. Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign.") Further, the government argues that the fact that Ms. Brown did not retire shortly after the August 1999 incident, but first filed for OWCP benefits, indicates that she did not feel compelled to retire after that incident. **[Gov't Br. 12-13]**

This court agrees with the Board that Brown has failed to allege any facts which, if proven, could establish the Board's jurisdiction, *i.e.*, that her retirement was involuntary. As to the first two elements of the involuntary retirement test, Brown fails to allege that the Agency "effectively imposed the terms of [her] . . . retirement" or that she "had no realistic alternative but to . . . retire." *See Garcia* 437 F.3d at 1329. The alleged impossible

productivity goals, groundless criticism, and desk throwing incident, however unpleasant or hostile they may have been, did not compel Brown's retirement on this record. Indeed, Brown did not retire, but rather continued to work during the nine-year span of alleged hostility and discrimination, and the two and a half year period after the Agency denied her light duty request. *See Terban*, 216 F.3d at 1024-25. In her brief to this court, Brown stated that she "loved her job and she had planned to work five (5) years longer" but "[she] did not enjoy the fact that she was forced to help her employees work and also, perform her supervisory duties." Appellant Br. ¶ 79. Although the circumstances of her position may not have been as enjoyable as she had wished, "it is well-established that the mere fact that an employee is faced with an inherently unpleasant situation or that his choices are limited to unpleasant alternatives does not make his decision involuntary." *Terban*, 216 F.3d at 1023.

As to the third prong of the involuntary retirement test, Brown fails to allege that her retirement was the "result of improper acts by the [A]gency" with respect to the Agency's denial of her light duty request. *See Garcia*, 437 F.3d at 1329. Brown fails to allege that she was actually entitled to a light duty assignment. Brown cites to a letter from her psychiatrist, addressed to "Whom it May Concern" dated January 27, 1997, which states that Brown was being treated "for her emotional problems of anxiety and stress . . . which were caused by her treatment while working at her job at the [Agency]," App. T, Ex. 79, but there is no evidence that Brown's supervisors saw this letter or, assuming they had, would have been required to assign Brown to light duty. Brown's actual diagnosis of chronic stress causing her to be unable to perform the functions of her job was not until May 2000, after she left work, and thus does not support her allega-

tion that the agency forced her to resign by denying her light duty. *See Hernandez v. U.S. Postal Serv.*, 74 M.S.P.R. (1997) ("Evidence of the appellant's medical conditions after his resignation is irrelevant to the voluntariness of his resignation.")

Similarly, Brown's May 2000 psychiatric report indicates that her chronic stress condition caused her to lose consciousness at work, App. T, Ex. 84 at 16-17, but nothing in the record indicates that the agency knew of the seriousness of her chronic stress disorder until after the August 1999 incident, or did anything wrongful to make her working environment intolerable given her condition. Brown's subjective feeling that she was being treated unfairly, and the resulting stress from those feelings, without more, is not enough to establish involuntary retirement. Moreover, as the Board noted in its decision, "[t]here is no indication in the record that [Brown] had made a new request for accommodation or indicated that she wished to return to work before she decided to retire in August 2000." *Board Decision* at 12. "In sum, it is not reasonably possible to characterize [Brown's] resignation as the embodiment of h[er] involuntary acceptance of terms dictated by h[er] employer." *Pitt v. United Staes*, 420 F.2d 1028, 1033 (Ct. Cl. 1970).

For the foregoing reasons, this court finds no basis to overturn the Board's determination that Brown failed to make a non-frivolous allegation establishing a claim of involuntary retirement.

Absent any basis for a claim of involuntary retirement, Brown's discrimination allegations are not properly before this court. *Garcia*, 437 F.3d at 1328 ("Congress has . . . allowed certain discrimination claims that are *not otherwise within the Board's jurisdiction* to be decided as part of the appeal" only when those discrimination claims are "'a basis for the action [which the employee may

appeal to the Board].'" (citing 5 U.S.C. § 7702(a)(1) (emphasis added)).

### III. CONCLUSION

For the foregoing reasons, this court affirms.

### **AFFIRMED**

### COSTS

Each party shall bear its own costs.