**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

NANCY J. SWICK,
               Appellant,

       v.

DEPARTMENT OF DEFENSE,
             Agency.

DOCKET NUMBER
DC-1221-17-0008-W-1

DATE: May 12, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Earl Mitchell, Trafford, Pennsylvania, for the appellant.

Anette H. Veldhuyzen, Esquire, Fort Belvoir, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed for lack of jurisdiction her request for corrective action in an individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review except as expressly MODIFIED by this Final Order to find that the appellant was a permanent employee, but did not make a nonfrivolous allegation that her resignation was involuntary, and did not prove that she exhausted administrative remedies before the Office of Special Counsel (OSC), and we AFFIRM the initial decision.

## BACKGROUND

¶2      Effective November 28, 2011, the agency appointed the appellant by reinstatement to a competitive-service position as a Nurse at the Fort Belvoir Community Hospital. Initial Appeal File (IAF), Tab 11 at 53. The position was subject to completing a 1-year probationary period beginning on the date of her appointment. *Id.* On December 13, 2012, the appellant's supervisor issued the appellant a memorandum detailing four complaints she had received about the appellant, and she informed the appellant that she was pursuing disciplinary action and would implement a performance improvement plan (PIP) as soon as possible.[2] IAF, Tab 6 at 85-86. On December 26, 2012, the appellant submitted a letter of resignation, effective January 4, 2013. IAF, Tab 11 at 51, Tab 13 at 14.

---

[2] The memorandum at issue is dated December 18, 2012; however, the appellant alleges that her supervisor provided the memorandum to her on December 13, 2012, which the agency does not dispute. IAF, Tab 6 at 10, 85-86; Petition for Review File, Tab 4 at 6.

¶3    On February 11, 2016, the appellant filed a complaint with OSC in which she alleged that the agency had committed 18 prohibited personnel practices. IAF, Tab 6 at 21-67. The alleged prohibited personnel practices included allegations that the agency had failed to provide the appellant with a performance plan and rating, issued a December 13, 2012 memorandum threatening to place her on a PIP and pursue disciplinary action against her, reassigned her patients and placed her on administrative duties, illegitimately renewed her nursing credentials, provided inaccurate information to an investigator with the Commonwealth of Virginia Board of Nursing, and ordered her to undergo a psychiatric examination. *Id.* at 26, 30-32. The appellant also alleged that she had suffered a constructive discharge. *Id.* at 32.

¶4    By letter dated June 29, 2016, the OSC Complaints Examining Unit notified the appellant that it had made a preliminary determination to close its inquiry into her complaint and provided her with an opportunity to respond within 13 days of the date of the letter. *Id.* at 19-20. On July 27, 2016, the appellant's representative provided OSC with a declaration from the appellant and additional documentation referenced in the declaration in support of her request for OSC to reverse its preliminary determination. *Id.* at 69-84. By letter dated August 30, 2016, the Complaints Examining Unit notified the appellant that it had received her July 27, 2016 response and had made a final determination to close its file. *Id.* at 18.

¶5    On October 4, 2016, the appellant filed this IRA appeal alleging that the agency's prohibited personnel practices caused her to resign, and thus she was subjected to an involuntary removal. IAF, Tab 1 at 5-17. She requested a hearing. *Id.* at 2. The administrative judge issued an order notifying the appellant of the elements and burdens of proof, and directing her to file evidence and argument, to establish Board jurisdiction over her IRA appeal. IAF, Tab 3 at 2-7. The appellant filed a response to the order in which she alleged that the agency perceived her as a whistleblower because she was "about to divulge acts

pertaining to 5 U.S.C. § 2302(b)" and that agency management viewed her continued presence in her position as a threat because they feared that she might reveal to upper-level management the alleged prohibited personnel practices they had committed. IAF, Tab 10 at 5-19. She also alleged that the agency likely believed she knew about the alleged prohibited personnel practices when she stated during a December 13, 2012 counseling session that she would resign and did not return to work or respond to attempts to contact her after that date. *Id.* at 19. Finally, the appellant alleged that the agency had abused its authority by requiring that she work under illegal conditions and unachievable standards, or be fired, and she had no choice but to resign. *Id.* at 18. The agency moved to dismiss the appeal for lack of jurisdiction on the grounds that the appellant had failed to nonfrivolously allege that she made a protected disclosure, engaged in protected activity, or that the agency perceived her as having made protected disclosures, and that she had failed to nonfrivolously allege that her resignation was involuntary. IAF, Tab 13 at 9-12.

¶6        The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction based on the written record. IAF, Tab 14, Initial Decision (ID). The administrative judge first found that the appellant resigned during her probationary period, and thus she was not an employee under 5 U.S.C. § 7511 and so she lacked standing to pursue an involuntary resignation appeal. ID at 2-3. The administrative judge then considered the appellant's claims to the extent they alleged that the involuntary resignation and other events she identified were taken against her in retaliation for whistleblowing activity. ID at 3-9. The administrative judge assumed for the purposes of determining jurisdiction that the appellant had exhausted her administrative remedies before OSC, but he found that the appellant did not present a nonfrivolous allegation that she made a protected disclosure, engaged in protected activity, or was perceived as a whistleblower, and thus the Board lacked jurisdiction over her IRA appeal. *Id.*

¶7    The appellant has filed a petition for review in which she argues that the administrative judge erred in finding that she was a probationary employee and that she did not make a nonfrivolous allegation that she was perceived as a whistleblower.  She further asserts that she has made a nonfrivolous allegation that her resignation was the product of misinformation and coercion.  Petition for Review (PFR) File, Tab 1.  The agency has responded in opposition to the petition.  PFR File, Tab 4.  As set forth below, we find that the appellant was a tenured employee at the time of her resignation, but she has not made a nonfrivolous allegation that her resignation was involuntary.  We also find that the administrative judge properly concluded that the appellant did not make a nonfrivolous allegation that she made a protected disclosure, engaged in protected activity, or was perceived as a whistleblower; moreover, we find that the appellant failed to exhaust her administrative remedies concerning her claim that she was perceived as a whistleblower.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge erred in finding that the appellant was a probationary employee.</u>

¶8    On review, the appellant asserts that the administrative judge erred in finding that she was terminated during her probationary period, and thus lacked standing to pursue her claim of an involuntary resignation, because she had completed 1 year of current, continuous service.  PFR File, Tab 1 at 11-12.  The agency has not disputed the appellant's assertion.  PFR File, Tab 4.  The Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation.  *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985).  To qualify as an "employee" with appeal rights under 5 U.S.C. chapter 75, an individual in the competitive service, such as the appellant, must show that she either is not serving a probationary or trial period under an initial appointment or has completed 1 year of current, continuous service under an appointment other than a temporary one limited to 1 year or less.

5 U.S.C. § 7511(a)(1)(A); *Dodson v. Department of the Navy*, 111 M.S.P.R. 504, ¶ 4 (2009). The Standard Form 50 appointing the appellant to the Nurse position dictated that she was to complete a 1-year probationary period beginning on November 28, 2011. IAF, Tab 11 at 53. The appellant served continuously under this appointment until January 4, 2013, when she resigned. IAF, Tab 11 at 51, Tab 13 at 14. When she resigned, the appellant had completed her 1-year probationary period and had completed 1 year of current, continuous service in a permanent position.[3] *Id.* Accordingly, we find that the appellant was an employee within the meaning of 5 U.S.C. chapter 75 and had standing to challenge her alleged involuntary resignation.

The appellant has not made a nonfrivolous allegation of Board jurisdiction over her involuntary resignation claim.

¶9        On review, the appellant argues that her resignation was involuntary because the agency threatened her with placement on a PIP and a disciplinary action, both of which could not be substantiated. PFR File, Tab 1 at 5-11. Below, the administrative judge observed that the appellant had raised a claim that her resignation was involuntary but found that the appellant lacked standing to pursue the claim and did not address it further. ID at 2-3. The administrative judge did not notify the appellant of her burden of proof and the elements to make a nonfrivolous allegation that her removal was involuntary; however, this error

---

[3] In this case, the agency appointed the appellant by reinstatement to a competitive-service position. IAF, Tab 11 at 53. The appellant would not be required to serve a probationary period under her most recent appointment if she was reinstated pursuant to 5 C.F.R. § 315.401 and "during any period of service which affords a current basis for reinstatement, [she] completed a probationary period or served with competitive status under an appointment which did not require a probationary period." 5 C.F.R. § 315.801(a)(2); *Dodson*, 111 M.S.P.R. 504, ¶ 9. Although the appellant previously may have completed such a period of service, she has not provided proof of it. However, we need not ascertain whether she completed such a period of service because we find that she completed both her 1-year probationary period and 1 year of current, continuous service under the appointment at issue and is thus an employee with appeal rights.

was not prejudicial to the appellant's substantive rights because the agency's jurisdictional response was sufficient to place the appellant on notice of the elements and burdens of proof of such a claim so as to afford her the opportunity to meet her burden for the first time on review. IAF, Tab 13 at 11; *see Yost v. Department of Health and Human Services*, 85 M.S.P.R. 273, 277 (2000) (holding that the administrative judge's failure to properly inform an appellant of the Board's jurisdictional requirements may not be prejudicial when the appellant is put on notice by the agency's motion to dismiss of what he must allege to establish jurisdiction), *aff'd*, 4 F. App'x 900 (Fed. Cir. 2001). Accordingly, we address the appellant's argument that her resignation was involuntary but find that she has not made a nonfrivolous allegation that the Board has jurisdiction over the action.

¶10 An employee-initiated action, such as a resignation, is presumed to be voluntary and thus outside the Board's jurisdiction. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010). An involuntary resignation, however, is tantamount to a removal and is thus within the Board's jurisdiction. *Adams v. U.S. Postal Service*, 108 M.S.P.R. 250, ¶ 9 (2008), *aff'd*, 309 F. App'x 413 (Fed. Cir. 2009). An appellant may overcome the presumption of voluntariness by presenting sufficient evidence to establish that the action was obtained through duress or coercion or show that a reasonable person would have been misled by the agency. *Searcy*, 114 M.S.P.R. 281, ¶ 12.

¶11 If an appellant makes a nonfrivolous allegation casting doubt on the presumption of voluntariness, she is entitled to a hearing at which she must prove jurisdiction by a preponderance of the evidence. *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc). To meet the nonfrivolous standard, an appellant need only plead allegations of fact that, if proven, could show jurisdiction. *Pariseau v. Department of the Air Force*, 113 M.S.P.R. 370, ¶ 14 (2010). Mere pro forma allegations are insufficient to meet the standard. *Id.* In determining whether the appellant has made a

nonfrivolous allegation, the administrative judge may consider the agency's documentary submissions. *Id.* However, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties, and the agency's evidence may not be dispositive. *Id.*

¶12 On review, the appellant contends that her supervisor misinformed her when she threatened the appellant in the December 13, 2012 memorandum and accompanying meeting with a PIP and disciplinary action that could not be substantiated, and she resigned to avoid the threatened PIP and disciplinary action. PFR File, Tab 1 at 5-11. Although the appellant's argument appears to be premised on allegations of coercion rather than misinformation, to the extent she intended to allege that her resignation was the result of the agency's misinformation, we find that the appellant has not made a nonfrivolous allegation that her resignation was involuntary due to misinformation. An appellant who claims that an involuntary action resulted from misinformation must show that the agency made misleading statements, and that she reasonably relied on the misinformation to her detriment. *Aldridge v. Department of Agriculture*, 111 M.S.P.R. 670, ¶ 8 (2009). The appellant need not show that the agency was intentionally misleading. *Id.* However, an agency is required to provide accurate information to permit the appellant to make an informed, and thus voluntary, decision regarding resignation. *Id.*

¶13 Although the appellant argues that the threatened PIP and disciplinary action could not be substantiated, she has not alleged that the factual information provided to her by her supervisor in the December 13, 2012 meeting and memorandum was inaccurate. PFR File, Tab 1 at 5-11. Specifically, the appellant has not alleged that the agency threatened to place her on a PIP and with disciplinary action but did not in fact intend to take either of the actions. *Id.* The appellant contends that she did not have an opportunity to examine or

challenge the complaints contained in the December 13, 2012 memorandum, but she does not allege that the complaints are inaccurate. *Id.* We thus conclude that the appellant has not made a nonfrivolous allegation that the agency made misleading statements that led to her purportedly involuntary resignation.

¶14    The appellant's argument that the agency threatened her with a PIP and a disciplinary action that could not be substantiated, which we interpret to allege that the agency coerced her resignation, is also unpersuasive.  To establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of her resignation, she had no realistic alternative but to resign, and her resignation was the result of improper acts by the agency. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 10, *aff'd*, 469 F. App'x 852 (Fed. Cir. 2011).  If an employee's working conditions are so intolerable that she is forced to resign, her resignation is involuntary and constitutes a constructive removal. *Id.* Thus, the Board must determine whether, considering the totality of the circumstances, the employee's working conditions were made so difficult that a reasonable person in her position would have felt compelled to resign. *Id.*

¶15    An appellant may show that a resignation was based on coercion when the resignation is induced by a threat to take an adverse or performance-based action that the agency knows could not be substantiated or when the agency takes steps against an employee "not for any legitimate agency purpose but simply to force the employee to quit." *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996) (holding that an example of an involuntary resignation based on coercion is a resignation induced by a threat to take disciplinary action that the agency knows could not be substantiated); *Barthel v. Department of the Army*, 38 M.S.P.R. 245, 251 (1988) (holding that, if the appellant could show that the agency knew that the reasons for the proposed 5 U.S.C. chapter 43 removal could not be substantiated, the proposed action would be purely coercive and would

render his resulting retirement involuntary).[4]  However, the doctrine of coerced involuntariness is "a narrow one." *Staats*, 99 F.3d at 1124.  It does not apply if the employee resigns because [s]he "does not want to accept [measures] that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that [s]he feels that [s]he has no realistic option but to leave." *Id.*  Likewise, "the fact that an employee is faced with an unpleasant situation or that h[er] choice is limited to two unattractive options does not make [her] decision any less voluntary." *Id.*

¶16      Here, the agency's December 13, 2012 memorandum informed the appellant of four complaints lodged against her about her patient care during November and December 2012 and informed her that disciplinary action and a PIP would be forthcoming.  IAF, Tab 6 at 85-86.  The appellant does not assert that the agency proposed any disciplinary action or issued her a PIP prior to her resignation.  Although a PIP is a precursor to a performance-based action, it is not itself a performance-based action.[5]  *See* 5 C.F.R. § 432.104 (providing that if an

---

[4] We recognize that the agency never proposed a separation action against the appellant, but it is reasonable to conclude that, in light of the discussion of a potential PIP, any such action could have been proposed pursuant to chapter 43.  *See* 5 C.F.R. §§ 432.104, 432.105.  In the past, the Board has held that there is no requirement that an agency establish the unacceptability of pre-PIP performance in analyzing a performance-based action under chapter 43.  *See, e.g.*, *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 19 (2001).  However, in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021), the U.S. Court of Appeals for the Federal Circuit held that, to support an adverse action under chapter 43, an agency "must justify institution of a PIP" by showing that the employee's performance was unacceptable before the PIP.  We emphasize that, here, the issue before the Board is not whether the agency could substantiate a potential chapter 43 action, but, rather, whether the appellant nonfrivolously alleged that her resignation was involuntary.  Thus, as set forth above, the appellant's allegation that any proposed PIP could not be substantiated should be and is considered here only as it relates to the issue of voluntariness.  As explained above in greater detail, we find that the appellant's allegations concerning the justifications for a potential PIP do not amount to a nonfrivolous allegation that her resignation was involuntary.  *See infra* ¶¶ 17-20.

[5] The appellant asserts that *Gonzales v. Department of Housing and Urban Development*, 64 M.S.P.R. 314 (1994), supports her contention that the threat to place

employee's performance is determined to be unacceptable in one or more critical elements, the agency shall, inter alia, notify the employee that unless her performance in the critical elements improves and is sustained at an acceptable level, she may be reduced in grade or removed, and provide her with a reasonable opportunity to demonstrate acceptable performance); *see also Shores v. Department of the Air Force*, 4 F. App'x 911, 913 (Fed. Cir. 2001) (nonprecedential) (explaining that the threat of a PIP would not support a finding of coercion because it is not itself a disciplinary action).[6]  Because the agency did not propose an adverse or performance-based action at the time of the appellant's resignation, and because we are not adjudicating a chapter 43 action, we need not determine whether any such action could be substantiated.  *See supra* ¶ 15 n.4.

¶17        Nevertheless, we have considered whether the totality of the circumstances surrounding the appellant's resignation would support a finding that the agency coerced her resignation, including whether the agency took any actions without a legitimate purpose to force her to quit.  *See Staats*, 99 F.3d at 1124.  Below, the appellant contended that her resignation was based solely on her supervisor's threats during their meeting on December 13, 2012.  IAF, Tab 10 at 15-16.  The appellant alleged that on that date, in addition to her supervisor's issuing the memorandum threatening disciplinary action and a PIP, her supervisor gave her a performance plan with absolute standards.  *Id.* at 15.  Additionally, the appellant alleged that at the end of the meeting, she asked her supervisor "if she was going to be fired" and her supervisor said, "[Y]es, if you keep making mistakes."  *Id.* at 53.  The appellant then informed her supervisor that she was resigning; her

---

her on a PIP was tantamount to threatening an adverse action; however, *Gonzales* addresses whether a PIP is a personnel action within the meaning of 5 U.S.C. § 2302(a)(2)(A), not whether it is an action within the meaning of 5 U.S.C. chapters 43 or 75.  *Gonzales*, 64 M.S.P.R. at 319.

[6] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive.  *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016).

supervisor replied, "Well, why don't you think about it, and stick around at least during the holidays." *Id.* at 15, 53.

¶18     The appellant contends that the agency could not threaten to place her on a PIP because it did not place her on performance standards during her probationary period, and she did not receive an annual performance rating. PFR File, Tab 1 at 7-8. It is true that if an agency determines an employee's performance to be unacceptable in one or more critical elements, it must notify the employee of those critical elements, inform her of the performance requirements or standards that must be attained to demonstrate acceptable performance in the position, and afford her a reasonable opportunity to demonstrate performance. *See* 5 C.F.R. § 432.104. The appellant submitted evidence that the agency had implemented performance standards and had evaluated her performance throughout 2012, including a November 2012 performance assessment, and notified her of performance concerns as early as August 2012. IAF, Tab 7 at 32-43, 52. The appellant does not contend that these concerns were unwarranted. In the performance plan implemented on December 13, 2012, portions of the critical elements do appear to contain absolute standards. There is no prohibition against absolute performance standards; rather, performance standards must be reasonable, based on objective criteria, and communicated to the employee in advance. *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1337 (Fed. Cir. 2004) (finding that the applicable statute "does not bar absolute performance standards"). The appellant does not contend that the performance standards in her December 13, 2012 performance plan were unreasonable or subjective, and she acknowledges receiving the plan. IAF, Tab 10 at 15, Tab 11 at 41-47. Accordingly, we find that the appellant has not set forth facts that would show that the agency lacked a legitimate basis for notifying her of its intent to place her on a PIP or was otherwise improperly undermining her performance.

¶19     The appellant also contends that the agency could not substantiate a disciplinary action because she did not have an opportunity to challenge the

complaints set forth in the December 13, 2012 memorandum, and imposing disciplinary action requires the results of a performance appraisal.  PFR File, Tab 1 at 8-11.  The agency had not proposed an adverse action against the appellant; therefore, she was not entitled to challenge the complaints, which she has not alleged are untrue.  *See* 5 U.S.C. § 7513(b) (providing that an employee against whom an action is *proposed* is entitled to a reasonable time to answer).  Additionally, although an employee's performance may be considered in determining the penalty in an adverse action, there is no requirement that the agency complete a performance appraisal before taking such an action.  *See, e.g.*, *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981) (providing that an employee's past work record, including performance on the job, is relevant for consideration in determining the appropriateness of a penalty for discipline).  Accordingly, we find that the appellant has not set forth facts that could show that the agency acted improperly or that she had no choice but to resign in the face of the forthcoming action.

¶20    Further, during the meeting between the appellant and her supervisor, although the supervisor stated that the appellant's removal was a future possibility, she also indicated that the appellant had the opportunity to improve her performance and avoid such an action.  IAF, Tab 10 at 53.  Additionally, when the appellant informed her supervisor that she intended to resign, her supervisor asked her to take additional time to consider her decision and to continue working while she mulled over that decision.  *Id.* at 15, 53.  Although the conversation was undoubtedly an unpleasant one, there is no indication that the appellant had no alternative but to resign.  Instead of resigning based on speculation that she would be removed, the appellant could have contested an action she thought was invalid if it occurred.[7]  *See Brown*, 115 M.S.P.R. 609, ¶ 15

---

[7] Moreover, there is no indication that the appellant was under an unreasonable time constraint in deciding whether to resign.  An appellant's decision to resign may be considered involuntary if she did not have sufficient time to reflect about her alternative

(finding the appellant's claims that she was apprehensive of the agency taking a disciplinary action against her after she stopped reporting to work to be insufficient to find that her retirement was involuntary, as she had the option to contest a future action). In considering the totality of the circumstances surrounding the appellant's resignation, we find that she has not set forth facts that could show that a reasonable person would have felt compelled to resign. *See, e.g.*, *Baldwin v. Department of Veterans Affairs*, 109 M.S.P.R. 392, ¶¶ 19-20 (2008) (explaining that allegations of being assigned to onerous tasks, being unjustifiably threatened with discipline, and being subjected to unnecessary investigations did not suffice to make a nonfrivolous allegation of jurisdiction over an involuntary resignation based on coercion).

¶21       Finally, in considering the appellant's resignation, we have reviewed her allegations that the agency retaliated against her by failing to provide her with a performance plan and rating, by issuing the December 13, 2012 memorandum threatening to pursue disciplinary action against her and place her on a PIP, by reassigning her patients and auditing her patient charts, and by ordering her to undergo a psychiatric examination, because it perceived her as a whistleblower. PFR File, Tab 1 at 13-16. When an appellant raises allegations of reprisal for whistleblowing activity in connection with a constructive removal claim, evidence of reprisal goes to the ultimate question of coercion. *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 24 (2004). As set forth below, we affirm the administrative judge's finding that there is no evidence that the appellant made protected disclosures, engaged in protected activity, or was

---

course of action before she was required to make her decision. *See Soler-Minardo v. Department of Defense*, 92 M.S.P.R. 100, ¶¶ 7, 9-10 (2002) (finding that the appellant was not under "extreme time pressure" when she accepted a demotion 10 days after the agency proposed the demotion). Here, the absence of a pending adverse action and the appellant's supervisor's urging the appellant to take additional time to consider her decision indicate that the appellant did not make her decision under an unreasonable time constraint and thus does not suggest the appellant felt compelled to resign. IAF, Tab 10 at 15, 53.

perceived as a whistleblower; thus, we do not find that retaliation played a role in the appellant's resignation. Accordingly, we conclude that the appellant has not made nonfrivolous allegations that cast doubt on the voluntariness of her resignation; therefore, the Board lacks jurisdiction over her resignation. We now turn to her IRA appeal.[8]

The appellant did not exhaust her administrative remedies before OSC concerning her claim of whistleblower reprisal.

¶22 On review, the appellant appears to argue that she established the Board's jurisdiction over her IRA appeal because she disclosed prohibited personnel practices in her OSC complaint and exhausted her administrative remedies before OSC regarding two actions that constituted reprisal for whistleblowing: the agency's order that she complete a psychiatric exam and failure to provide her with performance standards and a rating during her probationary period. PFR File, Tab 1 at 12-13. She also argues for the first time on review that she was perceived as a whistleblower because one of her supervisors knew that the agency's human resources department would ask the appellant whether she was provided with a performance plan and appraisal, and at that time, "the appellant would disclose all that she knew regarding the matter[.]" *Id.* at 13-14.

¶23 To establish Board jurisdiction over an IRA appeal brought pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA), the appellant must exhaust her administrative remedies before OSC and make nonfrivolous

---

[8] The appellant filed her OSC complaint on February 11, 2016, before filing her October 4, 2016 Board appeal. An appellant generally is limited to filing a Board appeal, a grievance, or a complaint with OSC under 5 U.S.C. § 7121(g). However, an appellant's election is only binding if it was knowing and informed. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 16 (2013). Here, the appellant was not advised that contesting her alleged constructive removal in an OSC complaint would preclude a chapter 75 appeal before the Board. *See id.*, ¶ 18. Further, if jurisdiction never attached to the appellant's original choice, then it was not a true choice among viable alternatives and is not binding. *Scalera v. Department of the Navy*, 102 M.S.P.R. 43, ¶ 9 (2006). Thus, the fact that the appellant filed a complaint with OSC does not preclude her from raising an involuntary resignation claim under chapter 75.

allegations that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as specified in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. §§ 1214(a)(3), 1221; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Jurisdiction in an IRA appeal is determined based on the written record. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 22 (2016) (holding that an employee is not entitled to a jurisdictional hearing in an IRA appeal).

¶24    The Board's jurisdictional inquiry generally begins by examining whether the appellant has shown that she exhausted her administrative remedies before OSC, as the Board's jurisdiction over an IRA appeal is limited to those issues raised before OSC. *See Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 6 (2014) ("The first element of Board jurisdiction over an IRA appeal is exhaustion by the appellant of his administrative remedies before OSC"), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015). Under 5 U.S.C. § 1214(a)(3), an appellant must seek corrective action from OSC before seeking corrective action from the Board in an IRA appeal. *Id.*, ¶ 6. To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must provide OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11.[9] The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended

---

[9] The WPEA, which became effective on December 27, 2012, does not affect the relevant holding in the cited authority, nor does it affect the relevant holdings in the other authorities cited herein that were issued prior to the effective date of the WPEA. *See* Pub. L. No. 112-199, 126 Stat. 1465 (2012).

the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and, their written responses to OSC referencing the amended allegations. *Id.* Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*

¶25 Here, the administrative judge observed that the appellant had not provided a copy of OSC's notice that it had closed its inquiry, and he assumed that the appellant had exhausted her administrative remedies before OSC and proceeded to find that the appellant did not make a nonfrivolous allegation that she was perceived as a whistleblower, made a protected disclosure, or engaged in protected activity. ID at 6-9. However, the appellant submitted a copy of her OSC complaint and supporting documentation, a supplemental declaration submitted to OSC in support of her complaint, and OSC's August 30, 2016 letter closing its file regarding her complaint; accordingly, we believe there was sufficient information to consider whether the appellant exhausted her administrative remedies before OSC. IAF, Tab 6 at 18-84.

¶26 We find that the appellant did not exhaust her administrative remedies because she did not allege whistleblower reprisal before OSC. The appellant completed the section of OSC Form 11 pertaining to prohibited personnel practices but did not complete the section pertaining to whistleblower reprisal. IAF, Tab 6 at 23-49. The letter from the appellant's representative referenced 5 U.S.C. § 2302(b)(1) and (12), which prohibit an employee who has the authority to take, or direct others to take, recommend, or approve any personnel action, from discriminating against an employee or applicant for employment, or from taking, or failing to take, a personnel action if it violates any law, rule, or regulation implementing or directly concerning merit systems principles, respectively. *Id.* at 21-22. In her complaint, the appellant only alleged that the agency discriminated against her on the basis of her disability and failed to

manage her performance in violation of multiple Army regulations, Federal regulations, and statutes. *Id.* at 23-49. She did not allege in her complaint or supplemental correspondence with OSC that the agency had retaliated against her for whistleblowing. *Id.* at 23-84. Therefore, we find that the appellant did not prove that she exhausted her administrative remedies before OSC concerning her allegations of whistleblower reprisal. *See Finston v. Health Care Financing Administration*, 83 M.S.P.R. 100, ¶ 9 (1999) (holding that the appellant's OSC complaint did not give OSC a sufficient basis on which to pursue an investigation into a whistleblowing claim when his submissions to OSC did not mention whistleblowing or other related terms, and he asked OSC to investigate an alleged violation of 5 U.S.C. § 2302(b)(4)).

¶27    In addition to her failure to raise a claim of whistleblower reprisal, the appellant did not allege any other facts that would give OSC a sufficient basis to pursue an investigation on the basis that the agency retaliated against her because an agency official perceived her as a whistleblower. An individual who is perceived as a whistleblower is still entitled to the protections of the Whistleblower Protection Act, even if she has not made protected disclosures. *Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 11 n.3 (2007). While portions of the analysis in such a case differ from a case in which the appellant actually made a disclosure, the appellant must still establish that she exhausted her remedies with OSC on the issue of whether the agency perceived her as a whistleblower. *Coufal*, 98 M.S.P.R. 31, ¶ 18. Here, the appellant did not allege in her OSC complaint or supplemental correspondence with OSC that any agency official perceived her as a whistleblower, nor did she allege facts that would give OSC a sufficient basis to pursue an investigation on this ground. IAF, Tab 6 at 23-84. At most, the appellant alleged before OSC that her supervisors covered up their mismanagement of her performance because they feared "reprisal" from their supervisors, but at no time did she allege that agency management viewed her as a potential source of a disclosure of this alleged mismanagement or

otherwise perceived her as a whistleblower. *Id.* at 33. Accordingly, we find that she did not exhaust administrative remedies before OSC with respect to her claim that the agency perceived her as a whistleblower. *See Coufal*, 98 M.S.P.R. 31, ¶ 18 (finding that the Board lacked jurisdiction to consider the appellant's argument that she was perceived as a whistleblower because she did not raise this argument in her complaint before OSC).

The administrative judge properly found that the appellant did not make a nonfrivolous allegation that she was perceived as a whistleblower, made a protected disclosure, or engaged in protected activity.

¶28        Although we find that the appellant failed to exhaust administrative remedies before OSC, had she met the exhaustion requirement, the administrative judge nevertheless properly found that the appellant did not make a nonfrivolous allegation that she was perceived as a whistleblower, made a protected disclosure, or engaged in protected activity. ID at 6-9. The appellant filed her OSC complaint well after she resigned from her position and did not allege that she made any disclosures during her employment with the agency. IAF, Tab 6 at 21-68. Rather, the appellant alleged throughout her jurisdictional response that she was perceived as a whistleblower because she was "about to divulge acts pertaining to 5 U.S.C. § 2302(b)" and her supervisors feared that she would reveal their alleged prohibited personnel practices to upper management. IAF, Tab 10 at 5-19. The Board has found that a variety of fact patterns can support a finding that an individual was perceived as a whistleblower. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 7 (2011). The appellant in the instant case appears to argue that certain agency officials believed that she made or intended to make disclosures that evidenced the type of wrongdoing set forth under 5 U.S.C. § 2302(b)(8). *See Mausser v. Department of the Army*, 63 M.S.P.R. 41, 44 (1994) (finding that the appellant may have been perceived as a whistleblower because the agency knew about his list of "waste, fraud, and

abuse," "safety issues," and violations of "government regulations," and of his intention to disclose the list).

¶29      During the pendency of her appeal below, the appellant did not identify a particular agency official who believed she engaged in whistleblowing, and she did not provide any facts to support her allegation that her managers were afraid that she would disclose their alleged prohibited personnel practices. IAF, Tab 10 at 5-20. For the first time on review, she alleges that a specific supervisor knew that on November 28, 2012, the date on which her probationary period would end, the human resources department would ask the appellant whether she had been provided performance standards and her annual appraisal, and that she then would disclose "all that she knew regarding the matter." PFR File, Tab 1 at 13-14. However, the appellant's claim fails because she alleged below that the human resources department did not ask about her rating and performance plan on the date in question. In addition, she provides no other facts to support her speculation that her supervisor may have believed that the human resources department would ask the appellant about her performance standards and appraisal on the date in question, or that the appellant would have intended to disclose her lack of performance standards and an appraisal to the human resources department. IAF, Tab 10 at 12-13.

¶30      The administrative judge also considered whether the appellant's continued presence in her position could constitute a protected activity, and we agree that the appellant failed to make a nonfrivolous allegation that she exercised her right to any appeal, complaint, or grievance right granted by any law, rule, or regulation; testified or otherwise lawfully assisted an individual in the exercise of such a right; cooperated with or disclosed information to the inspector general of an agency or to OSC; or refused to obey an order that would require her to violate a law, rule, or regulation. ID at 8; *see* 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), (D). Accordingly, we find that the appellant did not make a nonfrivolous allegation that the agency perceived her as a whistleblower, or that she made a protected

disclosure or engaged in protected activity. We conclude that the Board lacks jurisdiction over the appellant's request for corrective action in her IRA appeal and affirm the administrative judge's dismissal of the appeal.[10]

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[10] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. <u>5 U.S.C. § 7703</u>(b)(2); *see Perry v. Merit Systems Protection Board*, <u>582 U.S. 420</u> (2017). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. <u>5 U.S.C. § 7702</u>(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. <u>5 U.S.C. § 7702</u>(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[12]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                         Jennifer Everling
                                         Acting Clerk of the Board
Washington, D.C.