**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SAEED TAVAKKOL, | DOCKET NUMBER |
| Appellant, | SF-0752-19-0587-I-1 |
| v. | |
| UNITED STATES POSTAL SERVICE, | DATE:  January 9, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Saeed Tavakkol, Federal Way, Washington, pro se.

Steven B. Schwartzman, Seattle, Washington, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his alleged involuntary resignation appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find the issues of jurisdiction and timeliness inextricably intertwined, we AFFIRM the initial decision.

## BACKGROUND

The appellant was an Operations Industrial Engineer with the U.S. Postal Service's Seattle Network Distribution Center (NDC). Initial Appeal File (IAF), Tab 10 at 41. He filed the instant appeal, in which he alleged that, beginning in December of 2013, he was the victim of harassment based on race and national origin and in retaliation for whistleblowing and Equal Employment Opportunity (EEO) activity. IAF, Tab 6 at 4-24, Tab 8 at 8-14. He claimed that this harassment included the agency issuing him a letter of warning and a letter of concern, and placing him on a performance improvement plan (PIP). IAF, Tab 6 at 12, 15-16.

He also alleged verbal harassment, such as his work-assigned "mentor" informing the appellant that he carried a gun in his car at all times and claiming the appellant would "get a knife in the back." *Id*. at 4-5, 20. Moreover, he alleged that the agency ordered him to perform custodial and maintenance work, forced him to take unnecessary online communication courses, surveilled him at work, and interrogated him and that he was not allowed to speak on teleconferences. *Id*. at 6-8, 10-13, 15-16. He further alleged that the agency

failed to promote him and that he was humiliated in a meeting following his filing of a worker's compensation claim. *Id.* at 5-6, 13-14.

According to the appellant, as a result of these actions, he was diagnosed with various medical problems, including a generalized anxiety disorder, inability to concentrate with dizziness, neck pain, and insomnia. *Id.* at 6. Allegedly as a result of these conditions, he requested sick leave from February 2 to May 23, 2015. IAF, Tab 10 at 52, 58. On February 19, 2015, he submitted medical documentation substantiating his need for leave through May 23, 2015, and the agency approved his request. *Id.* at 52.

The appellant's manager also construed this medical documentation as a request for reasonable accommodation. *Id.* at 57. Accordingly, he referred the appellant to the agency's Seattle District Reasonable Accommodation Committee (DRAC). *Id.* In March 2015, the DRAC denied the appellant's request for reasonable accommodation. IAF, Tab 10 at 55-56. In doing so, it found that the appellant was a person with a disability, but that he was not entitled to the sole requested accommodation of working under someone other than the Plant Manager of the NDC. *Id.* The appellant filed an EEO complaint with the agency, alleging that the denial of accommodation and other actions preceding it were the result of discrimination and reprisal. *Id.* at 9, 17-18.

The appellant did not return to work on May 26, 2015, the first workday following the period of incapacitation covered by his medical documentation. The agency placed him in an absent without leave (AWOL) status beginning on May 26, 2015. *Id.* at 51. The appellant never returned to work, and he eventually resigned, effective July 20, 2015. *Id.* at 41-47. He alleges here that his resignation was involuntary.

On March 29, 2019, an administrative judge of the Equal Employment Opportunity Commission (EEOC) granted summary judgment in favor of the agency on the appellant's EEO complaint. *Id.* at 17-38. The agency subsequently issued a notice of final action on the matter, implementing the EEOC's decision.

*Id.* at 9-10. The issues presented in the EEO case involve many of the same allegations of discrimination, retaliation, and hostile work environment at issue in this appeal. *Id.* at 18-19. However, the administrative judge's decision and the agency's notice of final action in the appellant's EEO case did not address his alleged involuntary resignation, and the agency did not process the EEO complaint as a "mixed case."[2] Neither the FAD nor the EEOC decision informed the appellant of his appeal rights before the Board. *Id.* at 9-10, 37-38.

The appellant subsequently filed the instant appeal on July 26, 2019. IAF, Tab 1. The administrative judge informed the appellant that his appeal might be untimely and set forth the appellant's burden of proving, as a Postal Service employee, that he had Board appeal rights. IAF, Tab 3, Tab 12. After the parties responded, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction without holding a hearing. IAF, Tab 16, Initial Decision (ID) at 1.

The administrative judge found that the appellant was a Postal management "employee" with adverse action appeal rights under 5 U.S.C. chapter 75. ID at 9-10. The administrative judge then found that the appellant failed to nonfrivolously allege that the agency's conduct rose to the level of coercion necessary to overcome the presumption that his resignation was voluntary. ID at 12-13. He also disagreed with the appellant's argument that the denial of his reasonable accommodation request effectively took away his job. ID at 10. Thus, the administrative judge dismissed the appeal without holding the

---

[2] A mixed case arises when an appellant has been subject to an action that is appealable to the Board, and he alleges that the action was effected, in whole or in part, because of discrimination. *Miranne v. Department of the Navy*, 121 M.S.P.R. 235, ¶ 8 (2014). An appellant has two options when filing a mixed case: he may initially file a mixed-case complaint with the agency, followed by an appeal to the Board, or he may file a mixed-case appeal with the Board and raise his discrimination claim in connection with his appeal. *Id.* When an employee files a timely mixed-case complaint with the agency, the employing agency must issue a final agency decision on the employee's discrimination claims and provide the employee with notice of his rights to file an appeal with the Board. *Id.*, ¶ 9; 29 C.F.R. § 1614.302(d)(3).

appellant's requested hearing. IAF, Tab 1 at 2; ID at 1, 14. Because of his finding regarding jurisdiction, the administrative judge did not address whether the appeal was untimely filed. ID at 14 n.3.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He repeats many of his arguments from below, asserts that the initial decision contains numerous factual errors, argues that his mental and physical health problems were exacerbated by the agency and prevented him from working, and claims that his Official Personnel File (OPF) denotes that he was terminated as opposed to having resigned. *Id.* at 4-14. The agency has submitted an untimely response to the petition for review. PFR File, Tab 2 at 1, Tab 4; 5 C.F.R. § 1201.114(e). The Office of the Clerk of the Board notified the agency that its response was untimely and provided the agency an opportunity to submit a motion to accept the response as timely or to waive the time limit. PFR File, Tab 5. The agency has not filed such a motion. Therefore, we have not considered the agency's response. *See* 5 C.F.R. § 1201.114(g) (explaining that an untimely pleading on review generally must be accompanied by a motion showing good cause for the untimely filing).

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge found that the appellant, a Postal Service employee, was eligible to file a Board appeal under 5 U.S.C. chapter 75 because he was a management or supervisory employee with at least 1 year of current continuous service in the same or similar position. ID at 5-6. The parties do not challenge this finding, and we see no reason to disturb it on review.

The appellant failed to nonfrivolously allege that his resignation was the result of a hostile work environment.

The appellant's arguments involve an allegation that he was subjected to a hostile work environment. IAF, Tab 6 at 4-24, Tab 8-14; PFR File, Tab 1 at 6-7, 11-12. The administrative judge found that the appellant failed to nonfrivolously

allege that the agency's actions and conduct was so intolerable that he had no choice but to resign when he did. ID at 13. We agree.[3]

An employee-initiated action, such as a retirement or resignation, is presumed to be voluntary and thus outside the Board's jurisdiction, unless the employee presents sufficient evidence to establish that the action was obtained through duress or coercion or shows that a reasonable person would have been misled by the agency. *Gibeault v. Department of the Treasury*, 114 M.S.P.R. 664, ¶ 6 (2010). An appellant is entitled to a hearing on the issue of Board jurisdiction over an appeal of an alleged involuntary separation only if he makes a nonfrivolous allegation casting doubt on the presumption of voluntariness. *Id.* A nonfrivolous allegation is an allegation of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the appeal. *Id.* However, the appellant ultimately bears the burden of establishing jurisdiction over his appeal by a preponderance of the evidence. *Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 17 (2007); 5 C.F.R. § 1201.56(b)(2)(i)(A).

Here, the appellant did not allege that he was misled by the agency.[4] Instead, he argues that the agency created a hostile work environment that forced him to resign. Coercive involuntariness is a narrow doctrine. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 10, *aff'd per curiam*, 469 F. App'x 852 (Fed.

---

[3] The appellant suggests that he was forced to resign because his OPF states "Terminated" as his "Employment Status." PFR File, Tab 1 at 13. We are not persuaded. The appellant submitted a resignation, which the agency processed as such. IAF, Tab 10 at 41-42. Although the agency may have designated the appellant as "terminated" on his OPF, without further explanation, this reference appears to reflect that he is no longer an agency employee.

[4] The appellant asserts misrepresentation on review, but appears to be citing to the legal standard for involuntary resignations. PFR File, Tab 1 at 14. He makes no specific allegations of misrepresentation. *Id.* Similarly, he used the word "misrepresentation" below when making certain allegations of harassment. *E.g.*, IAF, Tab 6 at 5-6. However, neither below nor on review did he claim he relied on an agency misrepresentation in making his decision to retire. *See Morrison v. Department of the Navy*, 122 M.S.P.R. 205, ¶¶ 10, 13 (2015) (finding an appellant was entitled to a jurisdictional hearing when he made a nonfrivolous allegation that his retirement was involuntary because he materially relied on agency misinformation).

Cir. 2011). To establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of his resignation, he had no realistic alternative but to resign, and his resignation was the result of improper acts by the agency. *Vitale*, 107 M.S.P.R. 501, ¶ 19. The touchstone of the voluntariness analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived him of freedom of choice. *Id.* When alleging involuntary resignation due to harassment and a hostile work environment, the appellant must demonstrate that the employer engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in his position would have felt compelled to retire. *Id.*, ¶ 20. The Board addresses allegations of discrimination and reprisal for either prior EEO activity or whistleblowing activity in connection with an alleged involuntary retirement only insofar as those allegations relate to the issue of voluntariness. *Id.* Generally, a feeling of being unfairly criticized and difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to retire or resign. *Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000).

Although the appellant below labeled the agency's conduct as harassment, duress, and coercion, and continues to do so on review, the specific factual allegations on which he relies do not support his claim. IAF, Tab 7 at 4; PFR File, Tab 1 The Board has found that an appellant must make specific and detailed allegations, and that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard. *Clark v. U.S. Postal Service*, 123 M.S.P.R. 466, ¶¶ 6-7 (2016), *aff'd per curiam*, 679 F. App'x 1006 (Fed. Cir. 2017), *overruled on other grounds by Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 20 n. 11. Therefore, we have considered those specific factual allegations, and generally disregarded the appellant's legal characterizations of the agency's action as meeting the legal standard for an involuntary resignation. The appellant provides a lengthy

timeline, and therefore we limit ourselves to some examples to illustrate the deficiency of his assertions.

As one example, the appellant asserted that an agency manager accused him of being a terrorist. IAF, Tab 6 at 22. He repeats this argument on review. PFR File, Tab 1 at 7. The administrative judge did not address this specific claim. However, in the affidavit from which the appellant draws his conclusion, the individual merely states that, through a conversation with the appellant, he learned that the appellant was "involved as a leading figure in overthrowing the Government of Iran, how he is not allowed back in the country and his involvement in some sort of activity with American embassy in Iran." *Id.* This is significantly different than calling the appellant a terrorist. The appellant does not deny the underlying information, or explain how the affiant's knowledge of this information amounts to an accusation that the appellant is a terrorist.

Similarly, the appellant asserted that he was "repeatedly humiliated in public meetings" for filing an allegedly frivolous workers' compensation claim. IAF, Tab 6 at 5. The appellant does not raise this argument on review, and the administrative judge did not specifically address it. In support of this allegation, the appellant provided an excerpt from an affidavit completed by one of the managers who allegedly humiliated him. The manager stated in his affidavit that he would routinely discuss in staff meetings that "some frivolous [workers' compensation] claims are rejected." *Id.* at 5-6. This appears to be a statement of fact and the appellant provides no evidence suggesting it was directed at him.

The appellant also re-raises incidents that the administrative judge concluded were too remote in time from the appellant's resignation or that the appellant could have pursued through his then-ongoing EEO complaint against the agency. ID at 2, 10-13; PFR File, Tab 1 at 7-12. We agree with the administrative judge that, under these circumstances, the appellant failed to allege facts that would cause the reasonable person in his position to retire.

A resignation is not involuntary when an appellant has the option to stand and fight the alleged discrimination, retaliation, and harassment through an EEO complaint rather than resign. *See Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605, ¶ 17 (2009) (concluding an appellant had the option to stand and fight rather than resign when he had an EEO action pending well before his resignation). Further, alleged incidents of discrimination and harassment preceding a decision to resign by several months figure only tangentially into a resignation decision. *Id.*, ¶ 16. A period of extended leave during which an employee has little, if any, contact with the allegedly hostile supervisors in the months leading up to his decision to resign further weakens any inference that any alleged harassment and discrimination on their part weighed heavily in the employee's decision. *Id.* We find all of these circumstances present here.

As one example, the appellant asserted that his "mentor" made comments such as "go back to your country," that the appellant did not "have the right accent," and that the appellant needed to "play the game otherwise people [will] put a knife in your back."[5] *Id.* at 4. He repeats this argument on review. PFR File, Tab 1 at 6-7. We agree with the appellant that, as alleged, the first two of these three comments are unacceptable in the workplace. However, the focus of an alleged involuntary resignation is on the circumstances immediately preceding the appellant's action. *Miller*, 85 M.S.P.R. 310, ¶ 10. Here, the appellant fails to identify when these comments were made, and suggests they occurred throughout his time at the agency dating back to 2013. IAF, Tab 6 at 4. The appellant ceased working on February 2, 2015. He resigned over 5 months later. IAF, Tab 10 at 41-47. This time lapse undercuts the appellant's assertion that these workplace incidents at least 5 months earlier, and potentially years earlier, caused

---

[5] Regarding the knife comment, the "mentor" stated in the affidavit excerpt that he "was trying to make [the appellant] understand, the different culture, different ethnic background." IAF, Tab 6 at 4. This explanation is drastically different than referencing a literal knife in the back.

him to retire. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 13 (2010).

The appellant also asserted that sometime between March and October 2014, his mentor told him that he carried a gun in his car at all times, which the appellant perceived as a threat. IAF, Tab 6 at 4-5. He argues on review that management failed to take any action to address his safety concerns. PFR File, Tab 1 at 7. He also realleges that the agency harassed him by presenting him with, and then placing him on, a PIP in November and December 2014. IAF, Tab 6 at 9-10; PFR File, Tab 1 at 9-10. The appellant raised these claims in his EEO complaint, as well as in his initial appeal. IAF, Tab 10 at 18-19, 27-28, 30-31.

As for the mentor's comment about keeping a gun in his car, although very concerning, this event occurred at a minimum 8 months before the appellant's resignation, and potentially predated his resignation by over a year. IAF, Tab 6 at 4-5; *see Miller*, 85 M.S.P.R. 310, ¶ 10. While management's failure to address the appellant's safety concerns is troubling, this failure likewise occurred months prior to his resignation. Further, an employee is not guaranteed a stress-free working environment. *Brown*, 115 M.S.P.R. 609, ¶ 15; *see Baldwin*, 109 M.S.P.R. 392, ¶¶ 19-20 (2008) (finding that an appellant who alleged he was assigned to perform a difficult cleaning task without assistance, unjustifiably threatened with discipline, subjected to unwarranted investigations, and accompanied by agency police at his worksite failed to nonfrivolously allege that a reasonable person in his position would have been compelled to resign); *Miller*, 85 M.S.P.R. 310, ¶ 32 (observing that difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign).

The appellant argues on review that he was too ill to pursue his EEO claim. PFR File, Tab 1 at 11-12. We are not persuaded. His assertion is belied by his statement that he continued to pursue his EEO complaint by amending it in July 2015, to include his alleged involuntary resignation. *Id.* at 6. Further, his

resignation letter, which he submitted to the agency the same month, contains detailed allegations reflecting the appellant's ability to continue to advocate on his own behalf. IAF, Tab 10 at 42-47. In that letter, he asserted that many of the same events he raises here led to his resignation, such as reporting safety violations, his illness, and his placement on a PIP. *Id*. at 43-44.

Accordingly, we agree with the administrative judge that the environment and events described by the appellant do not rise to the level of coercion necessary to overcome the presumption that his resignation was voluntary.

The appellant failed to nonfrivolously allege that his resignation was the result of a denial of reasonable accommodation.

The administrative judge found that the appellant failed to allege that the agency denied him a reasonable accommodation, thus forcing him to resign. ID at 10. On review, the appellant questions the fact that his manager referred him to the DRAC for consideration of his potential reasonable accommodation request. PFR File, Tab 1 at 8. He also argues that the DRAC process, and the denial of his requested accommodation by the DRAC, effectively coerced him to retire. *Id.* at 4-6, 12.

All constructive adverse action claims have two things in common: (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013). The denial of a reasonable accommodation that would have permitted an employee to continue working despite his medical conditions, and that leads to the employee's resignation, is a wrongful action that can be the basis of an alleged involuntary retirement claim. *Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶¶ 2, 6-7 (2010) (finding that an appellant nonfrivolously alleged that her retirement was involuntary when she alleged that the agency denied her request for a reasonable accommodation that would have permitted her to continue to work full-time

despite her medical conditions).  However, here the appellant has not alleged any facts that would lead to the conclusion that the agency's actions were wrongful.

An agency is required to reasonably accommodate an employee's medical conditions if he can otherwise perform his job.  29 C.F.R. §§ 1630.2(m) (defining a "qualified" individual as one who can perform the essential functions of the position in question with or without reasonable accommodation), 1630.9(a) (setting forth the requirement to provide reasonable accommodation to an "otherwise qualified" employee).  The medical documentation the appellant submitted to the agency in February 2015 indicated that, in addition to requiring leave, the appellant needed "a change in employment" and to return to work in "a different position."  IAF, Tab 10 at 57.  Thus, the agency acted properly by initiating discussions with the appellant regarding reasonable accommodation. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶¶ 13-19 (2015) (finding that an agency acted properly by preventing an appellant from returning to work when he did not provide medical documentation the agency needed to determine his ability to perform his essential job functions and whether he posed a direct threat due to his medical condition), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016); 29 C.F.R. § 1630.2(o)(2)-(3) (listing types of reasonable accommodation, including job restructuring and reassignment to a vacant position, and stating that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process" with the disabled individual).

The appellant's only requested accommodation was to return to work in a position that did not report to the NDC Plant Manager.  IAF, Tab 10 at 55-56.  As the DRAC held, the EEOC's guidance states that, in most circumstances, an employer does not need to change a person's supervisor as a form of reasonable accommodation.  *Id*.; EEOC, Enforcement Guidance:  Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act,

Question 33 (Oct. 17, 2002). Accordingly, the DRAC did not act wrongfully in denying his request for accommodation. IAF, Tab 10 at 55-56.

The appellant suggests on review that the DRAC ignored his requests regarding his reasonable accommodation request, but he provides no specifics. PFR File, Tab 1 at 12. We find his statement to be conclusory, and thus frivolous. *See* 5 C.F.R. § 1201.4(s)(1) (explaining that a nonfrivolous allegation is one that is more than conclusory). The agency referred the appellant to the DRAC on February 11, 2015, within 2 days after he submitted medical documentation that suggested he might require a reasonable accommodation to perform his duties. IAF, Tab 10 at 57. The DRAC proceeded to communicate with the appellant, gather information from him, and issue a decision by the end of March 2015. *Id.* at 55-56. The decision provided the appellant with the option to request reconsideration through a human resources manager. *Id.* at 56. The appellant does not state exactly what steps he took following the DRAC decision and does not claim he requested reconsideration of the DRAC decision. Thus, we lack any specific information from which to conclude that the agency acted improperly by not responding to the appellant. *See Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 18 (explaining that an appellant's failure to engage in the interactive process prevented an agency from identifying a reasonable accommodation).

As the administrative judge observed, the agency ordered the appellant to return to work after May 23, 2015, absent continued medical restrictions justifying additional leave. *Id.* at 51; ID at 10. There is no evidence that the agency suggested that he no longer had a job. IAF, Tab 10 at 51; ID at 10. Accordingly, the appellant has failed to nonfrivolously allege that his resignation was the result of a wrongful processing or denial of his reasonable accommodation request.[6]

---

[6] The administrative judge, in finding the Board lacked jurisdiction, declined to address the issue of timeliness. ID at 14 n.3. We modify this language in the initial decision to find that the issues of timeliness and jurisdiction are inextricably intertwined. *See*

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

*Brown*, 115 M.S.P.R. 609, ¶ 5 (finding timeliness and jurisdiction inextricable intertwined in an involuntary retirement appeal because the resolution of the timeliness issue depends on whether the appellant was subjected to an appealable action). We therefore do not separately address the timeliness issue.

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _Jennifer Everling_____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.